HOWARD ET AL. *v.* COMMISSIONERS OF
THE SINKING FUND OF THE CITY
OF LOUISVILLE ET AL.

No. 295.   Argued January 12, 1953.—Decided February 9, 1953.

*W. A. Armstrong* argued the cause for appellants. With him on the brief was *D. E. Armstrong.*

*Gilbert Burnett* and *Alex P. Humphrey* argued the cause and filed a brief for appellees.

MR. JUSTICE MINTON delivered the opinion of the Court.

Two questions are presented by this appeal: (1) The validity of the annexation by the City of Louisville, Kentucky, of certain federally owned land on which a

Naval Ordnance Plant is located; and (2) The validity of the Louisville occupational tax or license fee ordinance as applied to employees of this Ordnance Plant.

By condemnation proceedings filed in 1940, the United States acquired the land on which the Ordnance Plant is located, with the consent of the Legislature of Kentucky given in a general statute.[1] In 1941, the Secretary of the Navy on behalf of the United States accepted exclusive jurisdiction over the area, and the Governor of Kentucky acknowledged this acceptance. By ordinances enacted in 1947 and 1950, the City annexed certain territory, including the Ordnance Plant tract. The annexation was not challenged by the United States. After the annexation, the City started to collect from employees of the plant a license tax for the privilege of working in the city, measured by one percent of all salaries, wages and commissions earned in the city.[2]

---

[1] "3.010. Consent of state to acquisition of lands. The Commonwealth of Kentucky consents to the acquisition by the United States of all lands and appurtenances in this state heretofore legally acquired, or that may be hereafter legally acquired by purchase, or by condemnation, for the erection of forts, magazines, arsenals, dock yards, post offices, custom houses, courthouses and other needful buildings, and for locks, dams and canals in improving the navigation of the rivers and waters within and on the borders of Kentucky." Ky. Rev. Stat., 1948.

[2] "On and after July 1, 1950, every person, association, corporation or other entity engaged in any occupation, trade, profession, or other activity in the City shall pay into the Sinking Fund of the City for the purposes set forth under Section 91.200 of the Kentucky Revised Statutes as amended by an Act of the General Assembly of 1950, an annual license fee for the privilege of engaging in said activities, which license fee shall be measured by one per centum of (a) all salaries, wages, commissions and other compensations earned by every person in the City for work done or services performed or rendered in the City; and (b) the net profits of all businesses, professions, or occupations from activities conducted in the City." Ordinance 83, Series 1950, City of Louisville.

The appellants, employees of the Ordnance Plant, sued in the Jefferson Circuit Court of Kentucky on behalf of themselves and others similarly situated for a declaratory judgment that the Ordnance Plant is not within the City and therefore the employees are not subject to the tax levied on them by the City, and for an injunction restraining the collection of the tax. The appellees filed a special and a general demurrer which were overruled by the court. The appellees having refused to plead further, the court granted judgment in favor of the appellants on the pleadings, holding that the appellants were not subject to the tax because the area occupied by the United States could not be annexed by the City since it ceased to be a part of the Commonwealth of Kentucky when exclusive jurisdiction over it was acquired by the United States. Enforcement of the taxing ordinance was enjoined. The Court of Appeals of Kentucky reversed, 248 S. W. 2d 340, the Circuit Court accordingly entered judgment for the appellees, and the Court of Appeals affirmed, 249 S. W. 2d 816. We noted probable jurisdiction.

The appellants first contend that the City could not annex this federal area because it had ceased to be a part of Kentucky when the United States assumed exclusive jurisdiction over it. With this we do not agree. When the United States, with the consent of Kentucky, acquired the property upon which the Ordnance Plant is located, the property did not cease to be a part of Kentucky. The geographical structure of Kentucky remained the same. In rearranging the structural divisions of the Commonwealth, in accordance with state law, the area became a part of the City of Louisville, just as it remained a part of the County of Jefferson and the Commonwealth of Kentucky. A state may conform its municipal structures to its own plan, so long as the state does not interfere with the exercise of jurisdiction within

the federal area by the United States. Kentucky's consent to this acquisition gave the United States power to exercise exclusive jurisdiction within the area. A change of municipal boundaries did not interfere in the least with the jurisdiction of the United States within the area or with its use or disposition of the property. The fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal area within its boundaries, so long as there is no interference with the jurisdiction asserted by the Federal Government. The sovereign rights in this dual relationship are not antagonistic. Accommodation and cooperation are their aim. It is friction, not fiction, to which we must give heed.

This question has been before other state courts, and the right to annex has been upheld. *Wichita Falls* v. *Bowen,* 143 Tex. 45, 52, 182 S. W. 2d 695, 699; *County of Norfolk* v. *Portsmouth,* 186 Va. 1032, 1047, 45 S. E. 2d 136, 142–143. We agree with these cases and hold that Louisville was free to annex the Ordnance Plant area.

Even though the Ordnance Plant is within the boundaries of the City of Louisville pursuant to the annexation, exclusive jurisdiction over the area still remains with the United States, except as modified by statute. U. S. Const., Art. I, § 8, cl. 17; *Surplus Trading Co.* v. *Cook,* 281 U. S. 647, 652. Within this jurisdiction, the right to tax income paid to employees of the Government who worked at the Ordnance Plant was granted by 4 U. S. C. §§ 105–110, known as the Buck Act. Section 106 of this Act reads as follows:

"§ 106. Same; income tax.

"(a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from trans-

actions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.

"(b) The provisions of subsection (a) shall be applicable only with respect to income or receipts received after December 31, 1940." 4 U. S. C. (Supp. V) § 106.

Section 110 (c) defines "income tax" as follows:

"(c) The term 'income tax' means any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts." 4 U. S. C. (Supp. V) § 110 (c).

Thus the right is specifically granted to the City of Louisville as a taxing authority of Kentucky to levy and collect a tax measured by the income or earnings of any party "receiving income from transactions occurring or services performed in such area . . . to the same extent and with the same effect as though such area was not a Federal area." In other words, Kentucky was free to tax earnings just as if the Federal Government were not there.

But the appellants next argue that the Court of Appeals erred in holding that the City's occupational tax or license fee was an "income tax" within the meaning of the Buck Act, though holding that this tax or fee was not an income tax under the Constitution of Kentucky.

Was this tax an "income tax" within the meaning of the Buck Act? In a prior case, Kentucky had held this tax was not an "income tax" within the meaning of the Constitution of Kentucky but was a tax upon the privilege of working within the City of Louisville. *Louisville* v. *Sebree*, 308 Ky. 420, 429–431, 214 S. W. 2d 248, 253–254. But the right to tax earnings within the area

was not given Kentucky in accordance with the Kentucky law as to what is an income tax. The grant was given within the definition of the Buck Act, and this was for *any tax* measured by net income, gross income, or gross receipts. In the instant case, the Kentucky Court of Appeals correctly stated that the question was whether the tax was an income tax within the meaning of the federal law. We hold that the tax authorized by this ordinance was an income tax within the meaning of the Buck Act. The City, it is conceded, can levy such a tax within its boundaries outside the federal area. By virtue of the Buck Act, the tax can be levied and collected within the federal area, just as if it were not a federal area.

Since the area is within the boundaries of the City of Louisville, and this tax is an income tax within the meaning of the Buck Act, the tax is valid. The judgment is

*Affirmed.*

Mr. Justice Douglas, with whom Mr. Justice Black concurs, dissenting.

I have not been able to follow the argument that this tax is an "income tax" within the meaning of the Buck Act. It is by its terms a "license fee" levied on "the privilege" of engaging in certain activities. The tax is narrowly confined to salaries, wages, commissions and to the net profits of businesses, professions, and occupations. Many kinds of income are excluded, *e. g.,* dividends, interest, capital gains. The exclusions emphasize that the tax is on the *privilege* of working or doing business in Louisville. That is the kind of a tax the Kentucky Court of Appeals held it to be. *Louisville* v. *Sebree,* 308 Ky. 420, 214 S. W. 2d 248. The Congress has not yet granted local authorities the right to tax the privilege of working for or doing business with the United States.