Tart, J.
The question to be decided is whether Columbus may levy an income tax on compensation earned by a nonresident of the city for services paid for by Ohio State University and performed for it within that portion of the property of Ohio State University located within the boundaries of the city.
*97 This court has previously held that a city may levy a tax on income earned within that city by a nonresident thereof. Angell v. City of Toledo (1950), 153 Ohio St., 179, 91 N. E. (2d), 250. See also Benua v. City of Columbus (1959), 170 Ohio St., 64, 162 N. E. (2d), 467.
At one time, it was considered that any tax by one government on income received from another government would represent such an undue interference with the governmental activities of the latter government as to constitute a tax upon that latter government or its activities.
However, since the decision in Graves et al., Commrs., v. New York, ex rel. O’Keefe (1939), 306 U. S., 466, 83 L. Ed., 927, 59 S. Ct., 595, 120 A. L. R., 1466, it no longer can be seriously argued that a nondiscriminatory tax on income earned for services rendered to or work done for a government represents a legally recognizable interference with the activities of that government so as to constitute a tax upon that government. In that case, which was decided before enactment of any federal statute providing for taxation by a state or its subdivisions of income received from the federal government, several prior decisions were overruled and it was held that such income was subject to taxation. See also Metcalf & Eddy v. Mitchell, Admx. (1926), 269 U. S., 514, 70 L. Ed., 384, 46 S. Ct., 172 (upholding federal tax on income from contract with state); James, Tax Commr., v. Bravo Contracting Co. (1937), 302 U. S., 134, 82 L. Ed., 155, 58 S. Ct., 208, 114 A. L. R., 318 (upholding state tax on income from contract with federal government) ; Helvering, Commr., v. Mountain Producers Corp. (1938), 303 U. S., 376, 82 L. Ed., 907, 58 S. Ct., 623 (upholding federal tax on income from lands leased from state); Helvering, Commr., v. Gerhardt (1938), 304 U. S., 405, 82 L. Ed., 1427, 58 S. Ct., 969 (upholding federal tax on salary of state employee); Marson v. Philadelphia (1941), 342 Pa., 369, 21 A. (2d), 228 (upholding city income tax on state officers and employees); Fordham and Mallison, Local Income Taxation (1950), 11 Ohio State Law Journal, 217, 254.
In our opinion, the application of the Columbus income tax to tax compensation paid by Ohio State University for services performed for that university, which is an instrumentality of *98 the state, does not represent a legally recognizable interference with the activities of that university or of the state so as to constitute a tax upon either. This conclusion also necessarily follows from, the decision in and that part of the syllabus of Benua v. Columbus, supra (170 Ohio St., 64), which reads:
“3. A municipal income tax does not become a tax on real property by reason of the fact that the income on which the tax is levied consists of rentals from such real property.
“4. Where a municipal income tax is levied on rentals from real property, the tax is not levied on the property from which the income is derived, there is no invasion of an area of taxation occupied by the state [i. e., taxation of real estate], and the doctrine of pre-emption is without application.” But, cf. Ohio Finance Co. v. City of Toledo (1955), 163 Ohio St., 81, 125 N. E. (2d), 731, where it was held that the General Assembly, pursuant to Section 13 of Article XVIII and Section 6 of Article XIII of the Ohio Constitution, had enacted legislation having the effect of limiting the power of a city to tax certain income. See also Glander, Pre-emption Doctrine (1960), 21 Ohio State Law Journal, 343, 353.
Plaintiff contends that the jurisdiction of Columbus to levy an income tax against a nonresident cannot, as it can with a resident, be based upon the presence of the taxpayer in Columbus, but must be based upon the power of Columbus over the income earned by the taxpayer in Columbus. If we assume that that contention is sound, the question then arises whether Columbus has power to tax income earned by a nonresident taxpayer in that part of Columbus which is in the area under control of the trustees of Ohio State University.
There are no statutory or constitutional provisions tending to indicate that ownership and use of an area within the boundaries of a municipal corporation by Ohio State University should have the effect of detaching or withdrawing that area from the confines of the municipal corporation. In our opinion, they do not have that effect.
It is reasonably arguable that, as the trial judge concluded in his opinion, the “authority to exercise all powers of local self-government” conferred upon Columbus by Sections 3 and 7 of Article XVIII of the Ohio Constitution, including, as this *99 court held in Angell v. Toledo, supra (153 Ohio St., 179), the power to levy an income tax on income earned by nonresidents within the municipal corporation, is sufficient to justify imposition of such a tax on income earned in the area in Columbus owned and used by Ohio State University even if there is no “fiscal relation” between that tax and “the protections, opportunities and benefits ” provided by Columbus. See Collins v. Yosemite Park & Curry Co. (1938), 304 U. S., 518, 82 L. Ed., 1502, 58 S. Ct., 1009 (holding California excise tax on liquor sold in area of national park valid although state had ceded all sovereign powers in that area to federal government except power to tax); Commissioners of Sinking Fund of Louisville v. Howard (Ky. 1952), 248 S. W. (2d), 340, affirmed, 344 U. S., 624, 97 L. Ed., 617, 73 S. Ct., 465.
However, in the opinion in Angell v. Toledo, supra, at 185 (153 Ohio St., 179), this court indicated that such an income tax roight violate “the due process clause” of the 14th Amendment to the Constitution of the United States if there was no such fiscal relationship. In finding that relationship in that case, Turner, J., stated:
“ * * * the city of Toledo does afford to plaintiff not only a place to work but a place to work protected by the municipal government of Toledo.”
In deciding this case, we will therefore assume, as the courts apparently did in Kiker v. Philadelphia (1943), 346 Pa., 624, 31 A. (2d), 289, and James, Tax Commr., v. Dravo Contracting Co., supra (302 U. S., 134), that such a fiscal relationship is necessary. See also Solomon, Nonresident Personal Income Tax (1960), 29 Fordham Law Review, 105; Fordham and Mallison, supra, at 255, 256 (11 Ohio State Law Journal, 217).
Obviously, the “place to work” at which plaintiff and his class earn their income is within Columbus. This is true even though the state owns that “place to work” and, as an owner, controls the operation of the university on that land, and even though there are no municipal streets or grounds within that “place to work.”
Possibly because the General Assembly may have recognized that exemption of university property from taxation *100 might reasonably lessen the inclination of Columbus to provide as much protection to university property as to other property within Columbus, the General Assembly has authorized “special policemen” and the contracting for fire protection. Sections 3345.04 and 3345.09, Revised Code. However, there is nothing in these or any other statutes indicating a legislative intention to interfere with the power and duty of Columbus to provide the “place to work” in Columbus, that is owned and operated by Ohio State University and in which plaintiff and his class earn their income, with the same police and fire protection that is afforded by Columbus to other property owners in Columbus. See City of Columbus v. Gantner (1950), 88 Ohio App., 146, 98 N. E. (2d), 75 (holding that Columbus had power to enforce valid municipal police regulation within Statehouse grounds). Furthermore, Section 3345,09, Revised Code, in specifically providing that a state university “may contract with a * * * municipal corporation having a fire department * * * for the service of such department * * * in affording fire protection * * * for property located outside the boundaries of such * * * municipal corporation,” quite clearly contemplates that such state university property is entitled (irrespective of any contract) to the services of a municipal fire department in affording fire protection for property of such university located inside the boundaries of the municipal corporation.
In our opinion therefore, since Columbus affords plaintiff and his class not only a place to work within its boundaries but also a place to work protected by the Columbus municipal government, there is an ample fiscal relationship between the Columbus income tax on such income and the protections, opportunities and benefits made available by Columbus with respect to that area (assuming such fiscal relationship is necessary) to justify Columbus in imposing that tax on such income.
This conclusion necessarily disposes of plaintiff’s contention that imposition of the Columbus tax on income earned by plaintiff and his class in the area in Columbus owned and operated by Ohio State University discriminates against plaintiff’s class in favor of nonresidents who come to Columbus but earn no income in Columbus and therefore are not taxed under, the Columbus income tax. In our opinion, the fact, that they *101 get no income from income-producing activities within Columbus that are entitled to protection by the Columbus municipal government, is sufficient justification for Columbus declining to tax them while at the same time taxing plaintiff’s class, especially since plaintiff’s class is only taxed upon income resulting from activities in Columbus,
In its conclusions of law, the Common Pleas Court found that the basis of the Columbus income tax is “jurisdiction or power over the income-earning process,” that “the income-earning process * * * is within the exclusive control of the university” but that the “tax is valid because the city has power over the income-earning process — the subject matter of the tax,”
In order to decide the instant ease, it is not necessary for us to rely upon those conclusions of law. For example, what is referred to therein as “the income-earning process” has at least two facets, that of the employer and that of the employee. A tax on the former of those two facets might be invalid as a tax on the university, but the Columbus tax on income earned in Columbus by nonresidents imposes a tax on only the latter of those two facets, i. e., the income of the employee. As indicated by authorities hereinbefore cited, such a tax on that income of the employee no longer represents a legally recognizable interference with the activities of the employer or a tax upon the employer or upon his activities.
As stated in plaintiff’s brief, plaintiff does not “separate out any one conclusion of the court and assign it specifically as error” but plaintiff’s “assignment is * * * limited to the trial court’s general conclusion that the tax was applicable to plaintiff * * * and valid as so applied.” Because of our conclusion that, on the facts found, the tax is so applicable and valid, the judgment of the Court of Appeals affirming the judgment of the Common Pleas Court must be affirmed.

Judgment affirmed.

Zimmerman, Matthias and O’Neill, JJ., concur.
Bell and Herbert, JJ., not participating.