**UNITED STATES of America,**
**Plaintiff,**

v.

**CITY OF BELLEVUE, NEBRASKA,**
**et al., Defendants.**

**Civ. No. 03267.**

United States District Court,
D. Nebraska.

Nov. 2, 1971.

Richard A. Dier, U. S. Atty., for the Dist. of Nebraska, for plaintiff.

David Lathrop, Omaha, Neb., and John Rice, Bellevue, Neb., for defendants.

## MEMORANDUM AND ORDER

RICHARD E. ROBINSON, Chief Judge.

THIS MATTER comes before the Court after hearing upon plaintiff's application for a permanent injunction against the defendants.

The defendant, City of Bellevue, Nebraska, has duly enacted an ordinance [1]

1. *Ordinance No. 940*
"AN ORDINANCE TO ANNEX TO THE CITY OF BELLEVUE, SARPY COUNTY, NEBRASKA, CERTAIN LANDS; LOTS AND REAL ESTATE LYING WITHIN THE BELOW DESCRIBED BOUNDARIES, TO THE CITY OF BELLEVUE, SARPY COUNTY, NEBRASKA, AND DESIGNATING EFFECTIVE DATE:
WHEREAS, all of the lots, lands and real estate lying within the boundaries described, as follows, to-wit:
All of those parts of Sections 35 and 36, Township 14 North, Range 13 East, plus all those parts of Sections 1, 2, 3, 4, 9, 11, 12 and 13, Township 13 North, Range 13, East of the 6th P.M., Sarpy County, Nebraska, and more particularly described as follows:
All those parts of Sections 35 and 36, Township 14 North Range 13 East, lying South and West of the existing City Limits of the City of Bellevue, Nebraska, and east of the U. S. Highway 73–75 right-of-way.
All that part of the Northwest Quarter [NW¼] of Section 1, Township 13 North, Range 13, East, lying West of the existing City Limits of the City of Bellevue, Nebraska.
All that part of the Southwest Quarter [SW¼] of Section 1 lying West of Tax Lots 22B, D1A2, and D1A1 together with that part of the Southwest Quarter [SW¼] of Section 1 lying South and West of Tax Lot 25.
All those parts of Sections 2, 11, 12 and 13, Township 13 North, Range 13 East, lying East of Highway 73–75 right-of-way, West of the County Board right-of-way and North of the Chicago, Burlington and Quincy Railroad right-of-way.
Beginning at the point of intersection of the East line of the C. B. & Q. Railroad right-of-way and the South Section line of Section 3, Township 13 North, Range 13 East; thence in a Southerly direction along the East line of the C. B. & Q. Railroad right-of-way to the point of intersection with the southerly right-of-way line of the County Road, also known as Capehart Road; thence in a Westerly direction along the Southerly right-of-way line Capehart Road; also known as Capehart Road; thence in a Westerly direction along the Southerly right-of-way line Capehart Road to the point of intersection with the East section line of Section 9, Township 13 North, Range 13, East; thence South along the East Section line of said Section 9, to a point which is 810 feet South of the Northeast corner of said Section 9; thence West a distance of 1,000 feet to a point; thence North along a line parallel to the East Section line of said Section 9 and Section 4, Township 13 North, Range 13 East to the point of intersection with the southerly right-of-way line of Capehart Road; thence in a northwesterly direction along the southerly right-of-way line of Capehart Road to the point of intersection with the East line of the Southwest Quarter [SW¼] of said Section 4; thence West to the Southwest corner of said Section 4; thence North to the Northwest corner of the South half [S½] of the Northwest Quarter [NW¼] of said Section 4; thence East to the Northeast corner of the South Half [S½] of the Northwest Quarter [NW¼] of said Section 4; thence North along the Quarter Section line to a point 1,650 feet North of the center of said Section 4; thence East to a point on the East Section line of said Section 4 and said point being 1,650 feet North of the East Quarter corner of said Section 4; thence South to the Northwest corner of the South Half [S½] of the Northwest Quarter [NW¼] of Section 3; Township 13 North, Range 13 East; thence East to the Northeast corner of the South Half [S½] of the Northwest Quarter [NW¼] of said Section

purporting to annex approximately 1898 acres of real estate officially designated as Offutt Air Force Base, and approximately 721 acres of real estate known as "the Capehart Housing Area." All of the said real estate is located in Sarpy County, Nebraska, and the plaintiff United States of America, is the owner in fee of said real estate, which totals approximately 2619 acres. There are approximately twelve thousand military personnel and their dependents living in Government quarters, this total being equally divided between these two main areas of real estate.

The plaintiff exercises exclusive legislative jurisdiction over that portion of real estate known as Offutt Air Force Base. This is clear from the case of Offutt Housing Co. v. Sarpy County, 351 U.S. 253, 256, 76 S.Ct. 814, 817, 100 L. Ed. 1151 [1956], wherein Justice Frankfurter writing the majority opinion stated that: "Offutt Air Force Base falls within the scope of Article I, § 8, cl. 17 of The United States Constitution * *."[2]

However, as to that portion known as the Capehart Housing area, all parties are agreed that although owned by the plaintiff, it remains subject to the legislative jurisdiction of the State of Nebraska.

After the enactment of the annexation ordinance, the plaintiff, United States, filed its complaint in the present action, seeking to enjoin the enforcement of said ordinance. This Court issued a temporary restraining order on April 17, 1969 [Filing #3] enjoining the defendants herein from effectuating the ordinance, a preliminary injunction to the same effect was issued by this Court April 25, 1969 [Filing #7]. The Court must now decide whether said injunction should be made permanent.

In resolving this controversy, the Court must first determine whether the defendant, City of Bellevue, Nebraska, has the power and authority to annex the realty in question. And, this Court has concluded that the United States Supreme Court decision in Howard v. Commissioners of the Sinking Fund of the City of Louisville, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 [1953], requires that the question be answered in the affirmative.

In *Howard* an area encompassing a Naval Ordnance Plant within the State of Kentucky had been acquired by a United States condemnation proceeding. The State consented to the acquisition and the United States accepted exclusive jurisdiction over the area. The Supreme

3; thence South to the South Quarter corner of said Section 3; thence East to the point of beginning. are contiguous and adjacent to the City of Bellevue, Nebraska, and are urban or suburban in character, and WHEREAS, said real estate will receive material benefits and advantages from annexation to the said city, NOW, THEREFORE, BE IT ORDAINED BY THE MAYOR AND COUNCIL OF THE CITY OF BELLEVUE, NEBRASKA: Section 1. All of the real estate lying within the area heretofore described be and the same hereby is included within the boundaries and territory, of the City of Bellevue, Nebraska, and said lands and the persons residing thereon shall hereafter be subject to all of the rules, regulations, ordinances, taxes and all other burdens and benefits of other persons and territory

included within the City of Bellevue, Nebraska. Section 2. This ordinance shall take effect and be in full force and effect after its passage, approval and publication according to law. Passed and approved this 24th day of March, 1969.

/s/ Robert M. Haworth
Mayor
Attest:
/s/ Mary Stricklett
City Clerk"

2. U.S.Const. Art. I, § 8, cl. 17, provides: "To exercise exclusive Legislation in all Cases whatsoever, over such District [of Columbia] * * * and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings * * *."

Court held that the fact that the land was under the "exclusive jurisdiction" of the United States did not ban its subsequent annexation by the City of Louisville.

In so holding the Court said, as follows:

"The appellants first contend that the City could not annex this federal area because it had ceased to be a part of Kentucky when the United States assumed exclusive jurisdiction over it. With this we do not agree. When the United States, with the consent of Kentucky, acquired the property upon which the Ordinance Plant is located, the property did not cease to be a part of Kentucky. The geographical structure of Kentucky remained the same. In rearranging the structural divisions of the Commonwealth, in accordance with state law, the area became a part of the City of Louisville, just as it remained a part of the County of Jefferson and the Commonwealth of Kentucky. A state may conform its municipal structures to its own plan, so long as the state does not interfere with the exercise of jurisdiction within the federal area, by the United States. Kentucky's consent to this acquisition gave the United States power to exercise exclusive jurisdiction within the area. A change of municipal boundaries did not interfere in the least with the jurisdiction of the United States within the area or with its use or disposition of the property. The fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal area within its boundaries, so long as there is no interference with the jurisdiction asserted by the Federal Government. The sovereign rights in this dual relationship are not antagonistic. Accommodation and cooperation are their aim. It is friction, not fiction, to which we must give heed.

"This question has been before other state courts, and the right to annex has been upheld. Wichita Falls v. Bowen, 143 Tex. 45, 52, 132 S.W.2d 695, 699; County of Norfolk v. Portsmouth, 186 Va. 1032, 1047, 45 S.E.2d 136, 142–143. We agree with these cases and hold that Louisville was free to annex the Ordinance Plant area." 344 U.S. at 626–627, 73 S.Ct. at 466–467.

The Court then held in *Howard* that the city could tax income paid to employees of the United States who worked at the Ordinance Plant, pursuant to 4 U.S.C. §§ 105–110, known as the Buck Act, by which Congress had specifically given states and state subdivisions the right to levy and collect income taxes in any federal area.

However, the Court made it clear that cities, even after an annexation of a federal area, could neither tax nor regulate such an area, except when such taxation or regulation is clearly granted to the cities by an Act of Congress. The Court said:

"Even though the Ordinance Plant is within the boundaries of the City of Louisville pursuant to the annexation, exclusive jurisdiction over the area still remains with the United States, except as modified by statute. U.S. Const. Art. I, § 8, cl. 17; Surplus Trading Co. v. Cook, 281 U.S. 647, 652, [50 S.Ct. 455, 74 L.Ed. 1091.]" 344 U.S. at 627, 73 S.Ct. at 467.

■ Thus, it is the conclusion of this Court that under federal laws, the City of Bellevue has the power and authority to annex both Offutt Air Force Base and the Capehart Housing area, and may tax and regulate in those areas to the extent permitted by the Congress of the United States.[3]

However, the aforesaid determination does not resolve the question regarding the propriety and legality of the an-

3. Under the reasoning of the *Howard* case, rejecting the "fiction of a state within a state" 344 U.S. at 627, 73 S.Ct. at 467, the residents of a federal enclave have been accorded rights they could not possess if such a fiction were indulged in. See Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 [1970].

nexation under the State law of annexation. The *Howard* case does not offer any guidance in this regard, for one can only infer from a reading of the case that the Court decided, without stating its reasons, that the annexation involved therein otherwise complied with Kentucky's law governing annexation.

 It might be contended that since Nebraska not federal law controls the legality of the annexation involved herein, this Court should abstain from deciding this controversy and defer to the Nebraska courts.

However, in Zwickler v. Koota, 389 U. S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 [1967], the Supreme Court held that a federal court should abstain and defer to the state courts only in "special circumstances."

The Court went on to point out that if a case involves a controlling, yet un-

decided, question of state law, the federal court, as a matter of comity, should abstain and allow the state courts to decide the state law question, since the requisite "special circumstance" would then be present.

In the present case, however, there can be no doubt that the basic principles of Nebraska's law of annexation are well established. Thus, the "special circumstance" discussed in *Zwickler* is no more present here than it was in that case. Neither does this Court discern any other "special circumstance" which would call for application of the judge-made abstention doctrine to this case.

The City of Bellevue, Nebraska, is a city of the first class and its power to annex surrounding territory is governed by Neb.Rev.Stat. §§ 16–117 through 16–121 [Reissue 1970].[4]

---

4. Nebraska Statutes. § 16–117. "Annexation; powers. The corporate limits of a city of the first class shall remain as before, and the mayor and council may by ordinance, except as provided in sections 19–2501 to 19–2508, and amendments thereto, at any time, include within the corporate limits of such city any contiguous or adjacent lands, lots, tracts, streets, or highways as are urban or suburban in character, and in such direction as may be deemed proper. Such grant of power shall not be construed as conferring power upon the mayor and council to extend the limits of a city of the first class over any agricultural lands which are rural in character."
§ 16–118. "Annexation; lands, lots, tracts, streets, or highways; contiguous; exception. Lands, lots, tracts, streets, or highways shall be deemed contiguous although a stream, embankment, strip, or parcel of land not more than two hundred feet wide lies between the same and the corporate limits."
§ 16–119. "Annexation; extraterritorial property use; continuation. Any extraterritorial property use regulations imposed upon any annexed lands by the city before such annexation shall continue in full force and effect until otherwise changed."
§ 16–120. "Annexation; inhabitants; benefits. The inhabitants of territories annexed to such city shall receive substantially the benefits of other inhabitants of such city as soon as practicable,

and adequate plans and necessary city council action to furnish such benefits as police, fire, snow removal, and water service must be adopted not later than one year after the date of annexation, and such inhabitants shall be subject to the ordinances and regulations of such city; *Provided*, that such one-year period shall be tolled pending final court decision in any court action to contest such annexation."
§ 16–121. "Annexation; validation. Whenever a city of the first class lawfully reannexes territory which it had formerly annexed but which annexation was illegal because the statutes, under which such original annexation was made were unconstitutional and void, [1] all contracts for public improvements, warrants and bonds issued by the city of the first class with respect to such territory and all payments made thereon shall thereby be validated, binding and legal upon such city of the first class in the same manner and with the same effect as if the original annexation had been lawful, [2] all obligations of any sanitary and improvement district assumed by a city of the first class with respect to such territory shall thereby be validated, binding and legal upon such city of the first class in the same manner and with the same effect as if the original annexation had been lawful, and [3] such city of the first class may issue bonds under the appropriate statutes relating to public improvements to

■ In challenging the purported annexation as being invalid under Nebraska law, the United States contends that an annexation ordinance of the defendant,[5] which was enacted prior to the one encompassing its realty, was invalid, in that it encompassed agricultural lands, rural in character, in violation of Neb. Rev.Stat. § 16–117 [Reissue 1970].[6] It is contended that it was this annexation which put the city of Bellevue in a contiguous position with Offutt Air Force Base proper, and that since it was invalid any subsequent annexation beyond that point would also be invalid.

However, this Court need not decide the validity of that particular ordinance, because it appears from the record that the United States owned none of the land involved in the annexation pursuant thereto. The United States therefore has no standing to question the validity thereof, and this Court presumes that the ordinance and annexation were valid. One legal entity may not assert the rights or litigate the injury of another, as a general rule. *E. g.* Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 [1943]. There are, of course, exceptions, such as when it is impossible for the one who is injured to assert his own rights. *E. g.* N.A.A.C.P. v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 [1953]. This case is not an exception, however, and the general rule applies.

■ The United States next attacks the annexation ordinance embracing its realty,[7] by referring to it as patent gerrymandering. It uses the term in such a way as to connote a bad purpose by the defendants. Be that as it may, this Court does not intend to decide this case by the mere use of a label.

The plaintiff also alleges that the area comprising Offutt Air Force Base is of a kind and character not within the purview of the Nebraska annexation statutes for cities, and that the area is not urban or suburban in character. It also alleges that the lands comprising the Capehart Housing area are not of the kind and character subject to inclusion in the defendant City, by annexation because they are neither contiguous nor adjacent to the City of Bellevue. It is also alleged that included in the area purportedly annexed are some agricultural lands not subject to annexation.

The Court has carefully reviewed the evidence in this case regarding the land character of the areas annexed as well as their contiguity, and is of the opinion that the evidence is contra to the plaintiff's allegations.

Plaintiff next contends that the City of Bellevue cannot provide to the inhabitants of Offutt Air Force Base any of the benefits required by Neb.Rev.Stat. § 16–120 [Reissue 1970],[8] to be provided to the inhabitants of annexed territories, such benefits now being provided by the plaintiff and being completely beyond the capability and the authority of the City of Bellevue to provide.

■ It is also alleged that it is impractical for the City of Bellevue to provide to the inhabitants of the Capehart Housing area those benefits required by Neb.Rev.Stat. § 16–120 [Reissue 1970], because of said housing area's distance from the City of Bellevue and its true character as having no true community of interest with the City of Bellevue.

However, Neb.Rev.Stat. § 16–120 [Reissue 1970] provides that an annexing city has one year after the date of annexation within which to adopt plans for the services called for therein. This Court cannot say that it would be impossible for the defendant City to com-

refund the warrants, warrant interest and any unpaid cost with respect to public improvements referred to in subdivision [1] of this section in the same manner and with the same effect as if the original annexation had been lawful."

5. Ordinance No. 929 of the City of Bellevue [July 22, 1968].

6. *See* note 3 *supra.*

7. *See* note 1 *supra.*

8. *See* note 3 *supra.*

ply with the statute within the time allotted thereby, and, thus, plaintiff's allegations are not at this time ripe for decision. In so holding the Court notes that the statute tolls the one year period during the pendency of any court action contesting the annexation.

All of the remaining allegations and contentions of the plaintiff, are either without legal merit or are too speculative for a determination at this time, except for one contention, which this Court views as dispositive of the case.

■ In Paragraph 13 on page 8 of the plaintiff's complaint [Filing #1] it is alleged:

"13. That, on or about the 24th day of March, 1969, and specifically on the 25th day of March, 1969, the defendants, Mayor and Members of the City Council of the City of Bellevue, Nebraska, did publically state that their purpose in enacting the said Ordinance No. 940 was to include, as part of the City of Bellevue's population, the approximately twelve thousand persons residing in barracks and public quarters on Offutt Air Force Base and in the Capehart Housing area, thereby obtaining a larger share of Nebraska state tax receipts that are distributed to municipalities on a per capita basis."

The evidence supports this allegation. In fact the record is replete with evidence which establishes that the sole purpose for the enactment of Ordinance No. 940 by the City of Bellevue, was to increase the City's revenue, rather than expand the city boundaries in an orderly fashion.

The Nebraska Supreme Court has held that a municipality cannot annex territory for revenue purposes only. Witham v. City of Lincoln, 125 Neb. 366, 250 N. W. 247 [1933]; Hustead v. Village of Phillips, 131 Neb. 303, 267 N.W. 919 [1936]; Joerger v. Bethany Heights, 97 Neb. 675, 151 N.W. 236 [1915]; Village

of Osmond v. Smathers, 62 Neb. 509, 87 N.W. 310 [1901].

Thus, it is the conclusion of the Court that the purported annexation herein involved is invalid as being undertaken for an unlawful purpose.

■ In so holding this Court is not unmindful of the fact that Offutt Air Force Base is the headquarters of the Strategic Air Command, to which is assigned the overwhelming majority of the nuclear deterrent power of the free world.

Justice Vinton in writing the majority opinion in *Howard, supra,* stated that in this type of case "[i]t is friction, not fiction, to which we must give heed." 344 U.S. at 627, 73 S.Ct. at 467. Surely this case represents the potential for friction with which this Court is to be concerned. If this Court were to sanction the annexation, the result would be to spawn an abundance of litigation between the United States and the City, every time the City enacted an ordinance purporting to affect the air base. This would be likely to occur even though the City was attempting to operate within the limited grants of Congress allowing it to regulate or tax within the federal enclave.

It is thus the finding of this Court:

■ That the purported annexation is invalid as a matter of Nebraska law; and [2] that in any event the interests of the United States in providing for the national security without interference by individual states or their political subdivisions, outweighs any interests of the City of Bellevue, Nebraska, in acquiring the territory encompassed by Offutt Air Force Base and the Capehart Housing Area. Accordingly,

It is ordered that the plaintiff, United States of America, should and will forthwith prepare and submit to the Court, for approval or modification, a form of permanent injunction consistent with the findings set forth in this Memorandum.