**UNITED STATES of America and Jordan Lilienthal, Appellees,**

v.

**CITY OF PITTSBURGH, a municipal corporation and Stephen A. Schillo, Treasurer of the City of Pittsburgh, Appellants.**

No. 84–3353.

United States Court of Appeals, Third Circuit.

Argued Feb. 7, 1985.

Decided March 5, 1985.

Rehearing Denied May 6, 1985.

**44**

D.R. Pellegrini, City Sol., City of Pittsburgh, Marvin A. Fein (argued), Deputy City Sol., Dept. of Law, Pittsburgh, Pa., for appellants.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Jonathan S. Cohen, Kenneth L. Greene (argued), U.S. Dept. of Justice, Tax Div., Washington, D.C., J. Alan Johnson, U.S. Atty., Constance M. Bowden, Asst. U.S. Atty., Pittsburgh, Pa., for appellees.

Before SEITZ, GIBBONS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The defendants, the City of Pittsburgh and its treasurer Stephen Schillo (collectively the "City"), appeal from an order granting summary judgment in favor of the plaintiffs, the United States and Jordan Lilienthal. 589 F.Supp. 179. The order declared that Jordan Lilienthal, a federal court reporter, was not subject to the City's business privilege tax. Subject matter jurisdiction in the district court was asserted pursuant to 28 U.S.C. § 1345 (1982). This court has appellate jurisdiction under 28 U.S.C. § 1291 (1982).

### I.

The following facts are undisputed. Plaintiff Jordan Lilienthal is a federal court reporter in Pittsburgh, Pennsylvania. He was appointed to that position by the United States District Court for the Western District of Pennsylvania under the authority granted by 28 U.S.C. § 753(a) (1982). As a federal court reporter, Lilienthal is a federal employee and an officer of the court. For his services, he is compensated in two ways. First, he is paid a salary. 28 U.S.C. § 753(e) (1982). Second, he may charge fees for preparing transcripts that are requested by any party. 28 U.S.C. § 753(f) (1982).

The City charges a business privilege tax equal to 5 mills on every dollar of gross receipts of every business in the city, other than certain exempted businesses. The City contends that federal court reporters conduct a "business" in selling transcripts and are subject to the tax. The United States, however, contends that federal court reporters are carrying out the business of the United States and are immune from the business privilege tax by reason of the supremacy clause of the constitution. There is no contention that a court reporter's salary is subject to the tax. The United States and Lilienthal filed this action in the district court seeking declaratory and injunctive relief.

The district court, upon cross motions for summary judgment, declared the imposition of the tax on Lilienthal's transcript income to be inconsistent with the supremacy clause and granted judgment in his and the United States' favor. The City then timely filed this appeal.

II. Jurisdiction in the District Court

■ The City contends that the district court lacked subject matter jurisdiction over this action. Jurisdiction in the district court was asserted pursuant to 28 U.S.C. § 1345 which provides that the district court shall have original jurisdiction over all civil actions brought by the United States. The City argues that section 1345 was an improper basis for jurisdiction because the United States lacks standing to challenge the tax assessment against Lilienthal. It further asserts that Lilienthal on his own could not invoke the jurisdiction of the district court.

We need not reach the latter contention that Lilienthal lacked an independent basis

for bringing this action because we believe that the district court properly held that the United States had standing to bring this action under section 1345. In *United States v. Lewisburg Area School District*, 539 F.2d 301 (3d Cir.1976), we held that the United States had standing to assert its claim that the residents and employees of a federal enclave were immune from the imposition of certain state taxes. We stated that "[i]t has been established that the United States may bring suit to protect its sovereign interests notwithstanding the lack of any immediate pecuniary interest in the outcome of the litigation." *Id.* at 305.

In this case, the United States asserts that the city's business privilege tax interferes with the operation of the federal judicial system. As such, it has alleged an injury to its sovereign rights sufficient to have standing to sue in the district court. *See also United States v. Nevada Tax Commission*, 439 F.2d 435 (9th Cir.1971) (United States has standing to bring action asserting that its contractors were immune from state tax).

### III. Abstention

 The City contends that the district court should have abstained from deciding the question of a constitutional tax immunity because a possible resolution of a state law issue in a pending state court action could obviate the necessity of the constitutional adjudication. *See Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The district court refused to abstain on the basis of the *Pullman* doctrine because there were important issues of federal statutory construction and because the issues of state law were not sufficiently unsettled to require abstention.

The *Pullman* abstention doctrine is one that is to be applied only in a narrow range of special cases. *Colorado River Water Conservation District v. United States*,

424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). As the Supreme Court stated:

> Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Id.* at 813, 96 S.Ct. at 1244 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959)).[1] Further, the determination of whether those exceptional circumstances exist is left to the district court, and this court will set aside the district court's determination only if we conclude that there has been an abuse of discretion. *Frederick L. v. Thomas*, 557 F.2d 373, 382 (3d Cir.1977).

A *Pullman*-type abstention serves two basic purposes: the avoidance of unnecessary constitutional pronouncements, and the avoidance of undue interference with sensitive state programs. *Id.* at 381. Neither of those purposes would be served by abstention in this case. First, adjudication by the federal court on the federal statutory issues could also obviate the constitutional adjudication. Second, the interference with the city tax program, at most, would be minimal since the case could be applied to only a narrow class of federal employees and not to all the businesses in the city. Finally, the mere possibility that a constitutional adjudication may be avoided by a state court interpretation of state law, by itself, is insufficient reason to require abstention. *Colorado River*, 424 U.S. at 815 n. 21, 96 S.Ct. at 1245 n. 21; *see Harman v. Forssenius*, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965).

Given the proper reluctance that a federal court should have for relinquishing its clearly established jurisdiction, and our limited scope of review, we cannot say that the district court abused its discretion in

---

1. The City does not contend that the district court should have dismissed or stayed this action under the separate theory announced in *Colorado River*. *See Moses H. Cone Memorial*

*Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 14–15, 103 S.Ct. 927, 936–937, 74 L.Ed.2d 765 (1983).

refusing to abstain under the *Pullman* doctrine.[2]

## IV. The Merits

The United States contends that it is unconstitutional to impose the Pittsburgh business privilege tax on the sale of transcripts by a federal court reporter. It argues that it is inconsistent with the supremacy clause of the constitution for a state to levy a tax directly against the United States without the consent of Congress. *United States v. City of Detroit,* 355 U.S. 466, 469, 78 S.Ct. 474, 476, 2 L.Ed.2d 424 (1958). *See also McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 427–35, 4 L.Ed. 579 (1819). Further, it contends that the constitutional tax immunity extends to cover taxes imposed on Lilienthal because the office of court reporter is "an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned." *United States v. New Mexico,* 455 U.S. 720, 735, 102 S.Ct. 1373, 1383, 71 L.Ed.2d 580 (1982).

The City, however, contends that even if there were any constitutional infirmity with imposition of its tax, Congress had waived any immunity through the Public Salary Tax Act of 1939. Because we believe that this statutory issue is dispositive, we address that question without deciding whether there would be a constitutional tax immunity absent consent.

Prior to the enactment of the Public Salary Tax Act of 1939, the compensation of federal employees for their services was exempt from state income taxes. *See* H.R. Rep. No. 26, 76th Cong. 1st Sess. 2–3 (1939); *Dobbins v. Commissioners of Erie County,* 41 U.S. (16 Pet.) 435, 10 L.Ed. 1022 (1842) (unconstitutional to tax salary of an officer of the United States). However in 1939, Congress expressly consented to the state taxation of the compensation of federal employees. The relevant section of the Act, as amended, reads:

The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States ... by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

4 U.S.C. § 111 (1982).

■ The district court incorrectly held that section 111 was part of the Buck Act and was irrelevant to this case. The Buck Act, enacted in 1940, waived, in part, the United States' right to jurisdictional immunity from state taxation of persons or transactions in exclusive federal enclaves. *See United States v. Lewisburg Area School District,* 539 F.2d 301, 308–09 (3d Cir.1976). The Public Salary Tax Act of 1939, enacted prior to the Buck Act, however, waived the United States' right to constitutional sovereign immunity from state taxation of federal employees' income. As such, it applies to all federal employees. Lillienthal is concededly a federal employee.

We next turn to the question of whether the section 111 applies to the City's tax. Congress consented to the "taxation ... of compensation for personal service as an officer or employee of the United States." The fees received for preparing the transcripts are fees for personal services. Congress intended that court reporters perform two distinct types of services which were to be compensated in two separate fashions. For attending court and preparing verbatim notes and certain required transcripts, the reporter is paid a salary. For preparing transcripts requested by the litigants, the reporter is paid a fee by the litigants or the government. *See* 28 U.S.C. § 753(e) & (f) (1982); H.R.Rep. No. 868, 78th Cong. 1st Sess. 3 (1943); S.Rep. No. 533, 78th Cong. 1st Sess. 7 (1943) (statement of Judge John Parker on behalf of the Judicial Conference committee that drafted the statute).

---

**2.** Although we reject the abstention argument, we nevertheless emphasize that we are not re-

solving any of the state law issues.

In preparing transcripts, the court reporter is an officer of the court and an employee of the United States. The preparation of a transcript is an official duty of the court reporter. 28 U.S.C. § 753(b) (1982). It has been held that a court reporter must file the transcript with the court even though the litigant fails to pay the entire fee. *Murphy v. L & J Press Corp.*, 577 F.2d 27, 29 (8th Cir.1978). The amount of the fees, type size, paper size, and number of lines per page of the transcripts are set by the Judicial Conference and are not a matter of discretion for the court reporter. *In re Peterson*, 494 F.2d 746 (9th Cir.1974). Upon completion of the transcript, the court reporter must certify its completeness and accuracy. 28 U.S.C. § 753(b) (1982).

The fact that the reporters are paid by a third party does not change the character of their service. The collection of fees has been a traditional means of compensation for services rendered by public officers or employees in their official capacity. *See* 67 C.J.S. *Officers* § 224(b) (1978). Congress intended that the court reporters be officers of the court and employees of the United States, and the detailed statutory regulation of their duties in the preparation of transcripts indicates Congress's intent that the court reporters remain such throughout the performance of all of their duties. Thus, we hold that the preparation of a transcript by an official court reporter, in accordance with 28 U.S.C. § 753(b), is a personal service rendered as an officer or employee of the United States within the meaning of 4 U.S.C. § 111 (1982).

■ The United States contends, however, that section 111 does not apply because the City's tax is not a tax on compensation. It argues that the section applies only to income taxes, and that because the business privilege tax is not a net income tax, it is not tax on compensation within the meaning of section 111. For support, it cites *F.J. Busse Co. v. City of Pittsburgh*, 443 Pa. 349, 353, 279 A.2d 14, 16 n. 1 (1971), which held that the City's business privilege tax is not an earned income tax

under Pennsylvania law. However, the question of whether Congress consented to the imposition of the business privilege tax is a question of Congressional intent, and therefore determined with reference to federal law. *See Howard v. Commissioners of the Sinking Fund*, 344 U.S. 624, 628–29, 73 S.Ct. 465, 467–68, 97 L.Ed. 617 (1953) (determination of what is an income tax under the Buck Act is a question of federal law).

Congress, in enacting section 111, intended that "[federal employees] should contribute to the support of their State and local governments, which confer upon them the same privileges and benefits which are accorded to persons engaged in private occupations." S.Rep. No. 112, 76th Cong. 1st Sess. 4 (1939). A broad reading of the meaning of "taxation on ... compensation" would comport with that intent. Further, in enacting the Public Salary Tax Act of 1939, Congress was aware that the states used a variety of forms of income taxes, including gross income taxes and occupational taxes. S.Rep. No. 112, 76th Cong. 1st Sess. 6–10 (1939). In this case, the City's tax is clearly a tax on gross receipts or gross income from the fees. We believe that the City's business privilege tax in this case is within the language and intent of section 111.

Finally, Congress intended that section 111 be applicable to taxes imposed by political subdivisions smaller than states. H.R. Rep. No. 26, 76th Cong. 1st Sess. 4 (1939). There is no contention that the City was without authority to impose such a tax, *see F.J. Busse Co.*, 443 Pa. 349, 279 A.2d 14 (upholding jurisdictional right of the City to impose the business privilege tax), nor is it contended that the tax discriminates against federal employees.

■ We therefore hold that if there were any federal constitutional immunity from the imposition of the City's business privilege tax on a federal court reporter's transcript fee income, that immunity was waived by Congress. Because of our resolution of this case, we need not reach any of the other issues raised by the City.

## V.

The order of the district court will be reversed and the case will be remanded to the district court for entry of judgment in favor of the City of Pittsburgh and its treasurer consistent with this opinion.