OPINION OF THE COURT
Carol S. Klein, J.
Facts
A petition alleging Charles B. to be a juvenile delinquent *375 was filed with this court on March 21, 2003. The complainant in this proceeding is Captain Gisela Westwater, United States Army, Judge Advocate General’s Corps, West Point, New York. The petition alleges 15 counts of various violations of the New York Penal Law which occurred on the property of West Point, a military reservation within Orange County. Specifically, respondent is charged with four counts of burglary in the third degree, a class D felony, in violation of Penal Law § 140.20; four counts of petit larceny, a class A misdemeanor, in violation of section 155.25 of the New York State Penal Law; five counts of criminal possession of stolen property in the fifth degree in violation of section 165.40 of the Penal Law; one count of grand larceny in the fourth degree in violation of section 155.30 (1) of the Penal Law; and one count of criminal mischief in the fourth degree in violation of section 145.00 of the New York State Penal Law. It is alleged that the respondent resides on West Point property and is the child of military personnel.
The respondent appeared before this court on March 26, 2003 to answer the allegations contained in the petition and entered a denial thereto. On May 16, 2003, respondent filed a motion seeking to dismiss the petition pursuant to Family Court Act § 315.1 on the grounds that this court lacks jurisdiction to adjudicate matters that take place on the West Point Military Reservation.
Motion Procedure
Respondent argues, in effect, that West Point, as a federal enclave, is under the exclusive jurisdiction of the federal government (i.e., a state within a state) and absent express permission from Congress, Family Court of New York State does not have subject matter jurisdiction.
The Orange County Attorney’s office, Catherine M. Bartlett, Esq. (Allan Drian, Esq., of counsel) as the presentment agency in juvenile delinquency matters does not address the merits of respondent’s motion. Rather, in response to the motion, the agency argues that the motion is defective due to improper service and should be dismissed. The presentment agency argues that the motion, dated May 15, 2003 and made returnable May 20, 2003, is defective since service of the motion was not made in compliance with CPLR 2214.
Law
CPLR 2214 (b) requires that a notice of motion and supporting affidavits be served at least eight days before the time at *376 which the motion is noticed to be heard. Moreover, CPLR 2103 requires that where papers are served by mail, five days are to be added to the prescribed time. As such, in the instant case, the respondent was required to serve the notice of motion and supporting papers upon the presentment agency 13 days prior to the return date if serving by mail and 8 days prior if personally serving. He did not. Service was made by mail, five days prior to the return date.
The presentment agency is correct in its response that respondent’s motion is defective under CPLR 2214. The penalty for failing to comply with CPLR 2214 is that only papers served in accordance with the provisions of the rule shall be read in support of, or in opposition to, the motion “unless the Court for good cause, shall otherwise direct” (CPLR 2214 [c] [emphasis added]).
Clearly, the respondent’s motion is defective as to service, however, dismissing the motion on such procedural grounds does not preclude the respondent from making it again. A test of the court’s subject matter jurisdiction can be raised at any time. (Robinson v Oceanic Nav. Co., 112 NY 315 [1889].) Dismissing the motion at this time simply delays the inevitable. The court deems this to be good cause for reading and deciding this motion at this time.
Motion Merits
Respondent’s motion raises a somewhat novel issue, perhaps one of first impression in Orange County, New York. As respondent points out, all of the alleged acts took place on the grounds of West Point, a military reservation in Highland Falls, Orange County, New York. Pursuant to State Law § 22 this property was ceded to the federal government for military purposes under Laws of 1909 (ch 59, eff Feb. 7, 1909).
Respondent’s position is that, upon ceding the land, the state further ceded jurisdiction relative to that land as well. Effectively, he asserts, that the statute created “a state within a state” to which no New York State laws shall apply. Moreover, respondent concludes New York having ceded jurisdiction over criminal matters to the federal government is without authority to act in this particular case. Once ceded, jurisdiction cannot be reconveyed to the state absent an act of Congress.
Respondent cites to what he asserts is an instructive case, People v Hillman (246 NY 467 [1927]), in support of his motion requiring this court to dismiss the petition. In Hillman, the Court of Appeals determined that the County Court of Orange *377 County had no jurisdiction to adjudicate criminal matters which occurred on a road within the bounds of West Point, and defendants were to be dealt with by the United States authorities.
Hillman is instructive for criminal matters, and certainly from an historic perspective, however, this court does not find it to be binding precedent based upon the facts of this case. The fiction of a “state within a state” has long since been disposed of. (See Howard v Commissioners of Sinking Fund, 344 US 624 [1953].) Additionally, the matter before the Family Court is brought pursuant to Family Court Act article 3. The Family Court is not a criminal court, but rather a civil court. As such, matters brought under article 3 are not considered criminal in nature but rather serve the purpose of rehabilitating a youth without attaching the stigma of a criminal charge or conviction. In fact, Family Court Act § 301.1 defines the purpose of article 3 to be “to establish procedures in accordance with due process of law (a) to determine whether a person is a juvenile delinquent and (b) to issue an appropriate order of disposition for any person who is adjudged a juvenile delinquent.” The court considers the needs and best interests of the respondent as well as the need for protection of the community.
The states, rather than the United States, have long been charged with the whole subject of the domestic relations of husband and wife, and parent and child. (Ohio ex rel. Popovici v Agler, 280 US 379 [1930].) In fact, in addition to traditional issues of child custody and child protection cases, there has been a long-standing precedent of federal deference to state jurisdiction in matters pertaining to juveniles. This policy was codified by Congress in 18 USC § 5032. (See, also, United States v Sechrist, 640 F2d 81 [7th Cir 1981].) Even in instances where the juvenile has violated a federal statute (which is not the case here), Congress has expressed an intent to defer to state courts with regard to juveniles (18 USC § 5032).
This court is not aware of any legislation preempting a state’s interest in juveniles residing within federal enclaves, nor does the jurisdiction of military tribunals extend to nonmilitary persons, including military dependents who reside within federal enclaves. (Reid v Covert, 354 US 1 [1957].) In fact, federal legislation exists specifically deferring to the states in cases of juvenile offenders. (18 USC § 5032.)
This court looks to two cases closer in point than Hillman to the one at bar. Courts of New Jersey and Florida have both *378 determined that the state court had jurisdiction over a juvenile’s delinquent acts similar to those in the instant case, when on a federal enclave or military base. In New Jersey in Interest of D.B.S. (137 NJ Super 371, 349 A2d 105 [Super Ct 1975], cert denied 70 NJ 144, 358 A2d 191 [1976]), the Appellate Division determined that although the juvenile lived within the confines of Fort Dix and allegedly broke into a private residence within the fort, he was subject to the jurisdiction of the state courts, notwithstanding that exclusive jurisdiction over the fort had been ceded to the United States. The court reached this conclusion because neither federal nor state law deems acts constituting juvenile delinquency to be crimes. The New Jersey court interpreted section 5032 to say that the state should take over jurisdiction of a juvenile if the state has, and is willing to accept jurisdiction, and has available programs and services adequate for the needs of the juvenile. The court held that even though the juvenile was housed on the military fort, the fact that he received his education in the state public school system and benefitted from the extracurricular activities provided by the school and surrounding community, indicated that the juvenile was a member of the social community of the state. Thus, concluding that it was the obligation of the state to protect and rehabilitate the juvenile, the court denied his contention that the state lacked jurisdiction, and affirmed the adjudication of delinquency.
Additionally, the New Jersey appellate court* pointed out that New Jersey juvenile statutes contain no express provision with respect to the territorial extent of the juvenile court’s jurisdiction, but rather expresses jurisdiction in terms of age and actions. And since the legislative approach to juvenile delinquency is protective and rehabilitative, not punitive, it is designed to permit the state to exercise its powers as parens patriae. So long as there was no interference with jurisdiction asserted by the federal government, the New Jersey court determined that the state’s jurisdiction continues.
Similarly, and more recently, the District Court of Appeals of Florida made the same determination with regard to a series of acts by a juvenile committed on the grounds of the Eglin Air Force Base. (M.R.S. v Florida, 745 So 2d 1139 [Fla 1st Dist 1999].) The court began its analysis by pointing out that the *379 Supreme Court long ago disposed of the legal fiction of a “state within a state” making clear that although the federal government has exclusive jurisdiction over an enclave, a state may assert jurisdiction if there is no conflict with federal jurisdiction. (Citing Howard v Commissioners of Sinking Fund, 344 US 624 [1953]; Evans v Cornman, 398 US 419 [1970].) It followed the guidelines of the federal statute specifically designed to address the correction of youthful offenders, which provides that except in certain described circumstances, the federal government should not proceed against a juvenile delinquent. (18 USC § 5032.)
Family Court Act § 302.1 similarly expresses jurisdiction in terms of age and actions, and fails to proscribe any proceeding in terms of territorial extent. As such, the statute clearly contemplates handling juvenile cases arising in its territorial jurisdiction.
Respondent does not assert that the Attorney General seeks to prosecute this case in the federal courts, nor does he assert that the case falls within any of the exceptions to 18 USC § 5032. Additionally, the court has not been notified by any other agency that the federal government is willing to proceed. In fact, the complainants in the instant case are authorities from West Point, i.e., federal government. Similar to New Jersey in Interest of D.B.S. (137 NJ Super 371, 349 A2d 105 [Super Ct 1975]), this court views that act to be the equivalent to the surrender to state authorities as contemplated by the Federal Youth Corrections Act. (18 USC §§ 5001, 5032; see, id.)
While the decisions in the states of New Jersey and Florida are not dispositive of this case, they lend support for interpretation of the federal and state statutes. State Law § 22, although ceding certain tracts of land at West Point, Orange County, New York to the United States, reserves in that transfer, the right to serve process, civil or criminal. This reservation has been construed by other New York courts to mean that West Point is not entirely outside the jurisdiction of the courts of New York State. (See, Goldberger Constr. Corp. v Rappoli Co., 169 Misc 40 [Sup Ct 1938]; Henning v Ebersole, 8 Misc 2d 768 [Sup Ct 1957]; Tammy S. v Albert S., 95 Misc 2d 892 [Fam Ct 1978].) In one instance, the Fourth Department held that “[u]pon the acquisition of territory by the Federal Government from a state, it is taken subject to all laws of the state which applied to the territory at the time of cession which are not contrary to Federal laws, and so continues until such time as Congress shall pass laws inconsistent therewith.” (Mat *380 ter of Kernan, 247 App Div 664 [4th Dept 1936], affd 272 NY 560 [1936]; see also, Reybold v Reybold, 45 AD2d 263 [4th Dept 1974].) Many of the provisions of the New York State Penal Law, which respondent is alleged to have violated, were initially enacted in 1909 but were derived from the Penal Code of 1881. State Law § 22 upon which respondent relies was enacted in 1909. (See, Penal Law § 165.00 et seq.) Arguably, West Point took that property subject to the laws of this state.
As a practical matter, and in final consideration of all of the above, should this court decline jurisdiction, respondent would be subject to federal prosecution, either as a juvenile delinquent or tried as an adult as determined by the federal government, under 18 USC § 5032. Such a determination would contravene the intent of the provisions under the Family Court Act particularly as the state has the available programs and services adequate for the needs of juveniles. (Cf., United States v Juvenile Male, 939 F2d 321 [6th Cir 1991].)
Now therefore, after due consideration, it is hereby ordered that the respondent’s motion is denied in its entirety.

 New Jersey’s court system is broken into three separate levels similar to New York State. The highest court is the Supreme Court, equivalent to the New York State Court of Appeals. The Appellate Division is the next highest court from which appeals from the trial courts are taken.