**LAKEVILLE** (Village) et, Plaintiffs, v. **PALMER,** Aud. of the City of Conneaut et, Defendants.

Common Pleas Court, Ashtabula County.

No. 43637. Decided September 20, 1955.

46

Ray Bolinger, Conneaut, Howard M. Nazor, Ashtabula, for plaintiffs.
Calvin W. Hutchins, Pros. Atty., Jefferson, Jack Stolson, City Solicitor,
Lynn E. Richards, Conneaut, for defendants.

**OPINION**

By McLAIN, J.

An amended petition was filed by the plaintiffs, the Village of Lake-ville and Stuart C. Blood, a resident thereof, seeking a permanent injunction against the completion of annexation proceedings for transfer of a portion of the Village of Lakeville to the City of Conneaut. Defendants include the City of Conneaut, its Auditor, Clerk of Council, and the Ashtabula County Commissioners.

The plaintiffs' amended petition sets forth certain claimed errors in the proceedings by the Commissioners in approving the annexation. A temporary injunction was heretofore granted pending a hearing on the merits.

The question now before this Court is whether or not the temporary injunction should be dissolved or made permanent.

The case was submitted to the Court upon certain agreed stipulations and evidence introduced by both sides at the hearing.

The original annexation petition was filed with the Board of County Commissioners of Ashtabula County on October 28, 1954. Notices of hearing were published and posted, as provided by law, and on January 10, 1955, the hearing was commenced by the Commissioners, but no final action taken at that time.

The hearing having been continued on several occasions for further evidence and study, the County Commissioners did, on February 10, 1955, approve the annexation by resolution.

Prior to this final action, it is agreed that withdrawals were filed in sufficient number by those who signed the original petition to reduce the number thereon to less than the statutory requirement to wit, a majority of the qualified electors residing in the territory to be annexed.

It is likewise agreed that thereafter, the proponents of the annexation filed additional signatures in sufficient number that if added to those remaining on the original petition for annexation, it would constitute a majority of the electors in the territory.

On February 18, 1955, the transcript of the proceeding was filed with the City Auditor of Conneaut, Ohio; on February 24, 1955, the petition; and on April 18, 1955, the amended petition of the plaintiffs herein was filed in the Court of Common Pleas of Ashtabula County.

The first question to be determined is the legal effect of the filing of withdrawals and additions before final action by the Board of County Commissioners.

Courts in the various states are not in accord as to when the right to withdraw a signature from a petition terminates. There are courts holding that the right expires at the time of the filing of the petition;

others when the sufficiency of the petition has been determined; some that it expires when jurisdiction attaches, and still others that the right continues until final action is taken upon the petition. See 11 L. R. A. (N. S.) 372; 126 A. L. R. 1032, and the cases therein collected.

Ohio is listed as a state following the rule that the right to withdraw continues until final action is taken upon the petition. 126 A. L. R. 1045, 1046.

That this rule of law is firmly imbedded in the jurisprudence of this state and has had long standing and repeated confirmations by the Supreme Court of Ohio, there can be no doubt. In the case of **Willis Hays et al, v. William H. Jones et al,** decided in 1875, **27 Oh St 218,** the Supreme Court held, in the matter of a petition for road improvement, as follows:

"The jurisdiction of the board of county commissioners to make the final order for the improvement, under these statutes, is special, and conditioned upon the consent, at the time the final order is to be made, of a majority of the resident land-holders, who are to be charged with the costs of the improvement.

"Resident land-holders, who have subscribed a petition praying for such road improvement, may, at any time before such improvement is finally ordered to be made by the board of county commissioners, withdraw their assent by remonstrance, or having their names stricken from the petition, and after withdrawal of consent, such persons can no longer be counted as petitioning for the improvement."

The Court, in its opinion, at page 231, said:

"* * * The right to remonstrate is not questioned, but the effect of remonstrance, as viewed by defendants, is certainly ingenious. If a petitioner for the improvement can have his name erased from the petition, as to him it has no vitality. If he signs the petition, and he afterward subscribes a remonstrance against the affirmative action of the commissioners upon the petition, it is claimed he is still petitioning for the improvement in the attitude of one trying to convince the commissioners that it would not be advisable to grant their prayer as petitioners, but rather to grant their prayer as remonstrants. This view of the case is not sound. They are for the improvement as prayed for, or against it, and cannot be allowed to occupy any middle ground. The statute cannot mean that, if there is a majority of qualified persons at some time between the commencement of the proceedings and the time the final order is to be made, whether there be such majority at that time or not, the improvement may be ordered. As held on the first proposition, this jurisdictional majority must be found in the attitude of asking for the improvement at the time the proposed final order is to be made; and one who has subscribed the petition may, at any time before the board makes the final order, by remonstrance or other unmistakable sign, signify his change or purpose. His assent is within his own control up to the time the commissioners move to make the final order. * * *"

The Supreme Court again, in the case of **State, ex rel., Kahle v. Rupert, Auditor, 99 Oh St 18,** held:

48

"In the absence of statutory provisions to the contrary an elector signing a petition authorized by the statutes of this state, invoking either official or judicial action, has a right to withdraw his name from such petition, or, if he be the sole petitioner, to dismiss the same at any time before judgment has been pronounced, or before official action has been taken thereon. **Dutten v. Village of Hanover, 42 Oh St 215; Hays et al v. Jones et al, 27 Oh St 218**, and **McGonnigle et al v. Arthur et al, 27 Oh St 251, 256.**

Again in 1936, in the case of **State ex rel., McLain v. Bailey, Jr. et al, Council of Village of Newton Falls, 132 Oh St 1,** the Supreme Court reaffirmed its view as announced in State, ex rel. Kahle v. Rupert, supra, and re-asserted at page 4, as follows:

"* * * That an elector signing a petition invoking either official or judicial action has a right to withdraw his name before action has been taken thereon. * * *"

The position taken by the defendants in this case is clearly contrary to this rule of law for if, as they contend, the commissioners' duty is to determine whether or not a statutory majority existed at the time the petition was filed, it would deprive the petitioners of their right to withdraw between the date of filing and the date upon which the petition is finally acted upon by the Board of County Commissioners.

The Court is not unmindful of the case of **Schulte et al, appellants, v. Flick, Auditor et al, appellees, 89 Oh Ap 252.** This case was an annexation proceedings and Syllabus 2 is as follows:

"In such proceeding, so far as the sufficiency of the signatures to the petition is concerned, the only finding necessary is that such petition when filed was signed by a majority of the free-holders residing in the territory."

Taken alone, the syllabus might be considered as sustaining the defendants' contention. However, the Appellate Court of the First District could not and, we believe, did not attempt to abrogate the rule heretofore promulgated by the Supreme Court of Ohio.

In the Schulte case, no withdrawals were presented, and the only petition on file with the commissioners was the one which was filed in instituting the proceedings. However, subsequent to the filing of the petition, certain persons, constituting a minority of the free-holders in such territory, so shifted their titles as to constitute themselves the majority at the time of a hearing on the petition. This was plain subterfuge which the Court in that case refused to recognize as invalidating the proceeding.

The Ohio rule is supported by the Courts of many other jurisdictions. Kinsloe v. Pogue, 115 Illinois Appellate, 391, affirmed 213 Illinois 302; 72 N. E. 906. Town of Blooming Grove v. City of Madison, 253 Wis. 215; 33 N. W. (2d) 312.

In the foregoing case, the Court made the interesting observation that at the time the statute for annexation was passed, it was the law of the State that petitioners could withdraw their names before final action was taken and that the Legislature did not see fit to make provision to the contrary. Likewise, in Ohio, the rule we have been discussing

has been of long standing and, in the meantime, the Legislature of Ohio has had the opportunity to amend and recodify legislation respecting annexation and, notwithstanding the long established rule in Ohio that withdrawals are permitted, that body has made no provision to the contrary.

As to what constitutes final action, it was held in Malcomson v. Strong, 245 Ill. 166; 91 N. E. 1036, that:

"Merely meeting and noting that a petition had been filed, fixing a date for its consideration and ordering the clerk to give notice, was not such final action upon the petition as deprives the subscribers of their right to withdraw from the petition."

The State of New York has also followed this rule. People ex rel. Irwin v. Sawyer, 52 N. Y. 296.

Since the rule in Ohio seems so firmly established giving the right of withdrawal at any time before final action on a petition, it would seem hardly necessary to discuss the basis for this rule save and except that counsel has put forth a claim that to permit withdrawals after the petition is filed creates a number of practical difficulties. Basically, of course, this objection should be addressed to the Legislature rather than to the Courts.

Nevertheless, an examination of the theory underlying this rule may be of some interest. Ordinary experience teaches that many persons sign petitions with little or no consideration and inquiry, whereas afterward, if the subject becomes a matter of public discussion, their attention becomes carefully drawn thereto, and the conclusion is often reached that they have been hasty or were in error in signing the petition.

There is no reason whatsoever when a person has changed his mind, after signing a petition which was purely voluntary and without consideration, and has concluded that either his own interest or the public interest is not in accordance with the prayer of the petition, that he could not remove his signature before action was taken.

Such a rule most certainly is more likely to reflect the real and mature judgment of those affected as well as it would be calculated to discourage a hasty presentation of a petition for signatures without a full disclosure of the real merits of the matter.

Political subdivisions are creatures of the Legislature, and that body unquestionably has a right to provide a statutory plan or procedure for the annexation of territory to municipalities. However, the right to live in a particular municipal unit is an important right and should be protected by all the safeguards that the law provides. People purchase or construct homes or places of business in particular towns, cities, and villages, because of the advantages which they believe are offered. Indebtedness is incurred by these subdivisions and improvements are made in accordance with the demands of those living within the boundaries of the particular municipal unit. It is apparent that changes, therefore, should be only made when there is compliance with the enabling statutes as enacted by the Legislature.

A leading case on this subject is that of LaLonde v. Carron County,

80 Wis. 380; 49 N. W. 960. In quoting from that case in State, ex rel., Andrews v. Boyden, 108 N. W. 897, the Court said:

"The learned circuit judge held that the board had the right to allow persons who had signed the petition to withdraw their names therefrom or to strike their names from the petition when requested so to do by the signers before the petition was finally acted upon by the board. Was that a correct view of the matter? We think it was and it was in accord with reason and common sense. For what valid objection is there either in law or on grounds of public policy, against allowing a person who has signed a petition asking for the removal of the county seat from withdrawing his name from the petition before it is acted upon by the board? As the learned counsel for the defendants say, a person may have been deceived or entrapped, or through inadvertance or thoughtlessness may have signed such a petition, and, on reflection, and before action is taken on it may desire to correct his action, and withdraw his name. Why should he not have the right and privilege of doing so? An intelligent man acting deliberately and understandingly, may change his mind on such a question, and conclude he has made a mistake in asking for a change of the county seat, and that the public interest will be promoted by having the county seat remain where it is. * * *"

Are the complaints of the defendants as real as they feel them to be? Could not sufficient signatures be obtained in annexation proceedings so that it would withstand withdrawals or at the time the petitions were signed, could not the advantages of annexation be sufficiently explained to the signers and a full disclosure made of the entire matter so that the signers themselves would not want to withdraw from the petition later, and could not the petitioners, if the withdrawal depleted the number to the extent that the Board of County Commissioners no longer had jurisdiction, circulate a new petition containing the adequate number of signatures? Surely all this could be accomplished if there existed the necessary majority of those who, upon full consideration of the advantages and disadvantages of annexation, desired to make a change.

It has been strenuously urged that if the right to withdraw is recognized, it is no more than fair and just that the right to add names to the petition, after the withdrawals, should likewise be authorized.

This position is untenable. The proceedings for annexation are purely statutory. Jurisdiction is not conferred by the statutes upon the Board of County Commissioners but can merely be invoked by filing a petition containing the names of the majority of the qualified electors.

If this petition is deficient in number on the day of the filing, no jurisdiction can be invoked. Likewise, if it later becomes deficient in that respect, the jurisdiction already invoked is lost. There just is no provision in our statutes, as presently enacted, authorizing additional signatures in annexation proceedings.

There is no provision for reinstating the petition by the process of reviving the petition by means of new signatures. It would, in effect, be instituting a new annexation proceeding in a manner contrary to law.

It is the clearly evinced intention of the Legislature, in providing

a sixty day waiting period, to guard against hasty and ill considered changes in municipal boundaries. The addition of new signatures at a later date would plainly defeat the operation of this mandatory statutory requirement.

Regardless of the exigencies of the situation, the Court cannot, by judicial pronouncement, approve an improvised procedure for annexation in direct defiance of the manifest provisions of the statutes relating thereto.

The case of **County Board of Education of Putnam County et al v. Board of Education of Hartsburg Rural Special School District of Putnam County, 112 Oh St 108,** has been offered as indicating that the Supreme Court has, at least by indirection, given approval to addition of names on a petition as well as withdrawals.

The case, however, is clearly not in point. The Court recognized the rule in Hays v. Jones, supra, but went on to say:

"The filing of a remonstrance under §4376 **GC**, on the contrary, does not invoke the jurisdiction of the county board of education. The board of education in the first instance has power to create a school district from one or more school districts or parts thereof without the filing of a petition by the electors, but the remonstrance when duly filed makes ineffectual the action of the board. * * *"

In view of that fact, the Court did say, at page 113:

"* * * We have no doubt that in the given case the signers to the remonstrance could have withdrawn their names before and upon to the end of the 30-day period. It is only when the 30-day period had elapsed that the number of names upon the remonstrance is definitely fixed. * * * Names could no doubt be added to the remonstrance within that time by qualified electors, and names could also be cancelled upon the remonstrance, * * *"

It is, therefore, apparent that this case, instead of supporting the defendants' contention, on the contrary, re-affirms Hays v. Jones, hereinbefore considered and distinguishes the case being passed upon for the reason that the statute itself, §4376 **GC**, gives, in the first instance, continuing jurisdiction to the Board of Education, and that the number of names on the remonstrance is definitely fixed as of the end of the thirty day period.

By reason of the fact that the conclusion herein reached in respect to the legal effect of the withdrawals and additions warrant the relief prayed for in the petition, other alleged errors in the proceedings before the Board of County Commissioners are not considered and passed upon for the reason that they are chiefly germaine to this particular annexation proceeding.

For the foregoing reasons, the Court has concluded as follows:

1. That in proceedings for annexation of a village to a municipal corporation, the petition must contain a majority of the qualified electors at the time it is filed.

2. That if, before final action by the Board of County Commissioners, sufficient withdrawals are filed by the original petitioners to reduce the number of petitioners to less than a majority as required by

**52**

the statutes, the Commissioners have no jurisdiction to proceed, their invoked jurisdiction having been lost by virtue of the withdrawals.

3. That the annexation laws of the State of Ohio make no provision for reviewing or restoring jurisdiction to a Board of County Commissioners by the addition of new signatures after jurisdiction over the matter has been lost by virtue of withdrawals before final action on the petition.

It is, therefore, ORDERED, ADJUDGED, and DECREED that a permanent injunction issue without bond enjoining the defendant, B. L. Palmer, as Auditor of the City of Conneaut, Ohio, from making a record of the proceedings before the Board of County Commissioners held on February 10, 1955, in respect to the annexation of a portion of Lakeville Village to the City of Conneaut, Ohio; that the defendant, George Kitinoja, as Clerk of the Council of the City of Conneaut, Ohio, be and enjoined from accepting or making any record of any proceedings or presenting any legislation to the City Council of the City of Conneaut, Ohio, relative to the foregoing proceeding, and the action of the Board of County Commissioners approving the annexation in this proceeding, is hereby set aside and held for naught.

Counsel may prepare a journal entry.