**UNITED STATES of America,**
**Appellee,**

v.

**CITY OF BELLEVUE, NEBRASKA,**
**Appellant.**

**No. 72–1003.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1972.

Decided Jan. 10, 1973.

As Modified on Denial of Rehearing
and Rehearing En Banc
March 1, 1973.

David S. Lathrop, Omaha, Neb., for appellant.

Eva R. Datz, Atty., Appellate Section, Land and Natural Resources Div., Dept. of Justice, Washington, D. C., for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and TALBOT SMITH, District Judge.*

## PER CURIAM.

The case before us is unique. Neither diligence of counsel nor our independent research had disclosed a case on all fours. What we have presented is an attempt by the City of Bellevue, Nebraska, to annex a SAC (Strategic Air Command) base, indeed, its headquarters, and its adjacent housing area, referred to in the record as the "Capehart housing area."

The Offutt Air Base was described in the opinion of the District Court (permanently enjoining the annexation) [1] as "the headquarters of the Strategic Air Command, to which is assigned the overwhelming majority of the nuclear deterrant power of the free world." From this base, the record discloses, the proper authorities plan, manage, direct and control the "Strategic Nuclear Deterrant capacity of the free world; all of the B52 aircraft, all of the Minute Men and Titan missiles . . ." Here the Army, Navy, Air Force and foreign representatives sit together and "plan and coordinate the targeting of all the nuclear weapons that the free world has under its control." From here also is controlled the Flying Command Post, which is in the air 24 hours per day, and here is stationed the Wing which processes "all of the recognizance [sic. reconnaissance] data" collected by SAC and other military agencies both photographic and electronic, as well as the "Air Weather Control," that collects meteorological data, from world-wide sources, including satellites, processes such data, and distributes throughout SAC (the Strategic Air Command) and the United States Air Force, world wide. In addition, there are certain Groups whose missions are classified.

The Air Base itself is under the exclusive legislative jurisdiction of the Federal government.[2] U.S.Const. Art. I, § 8, cl. 14. The Capehart housing area, on the other hand, although owned by the United States, is subject to the legislative jurisdiction of the State of Nebraska. So far as federal (as distinguished from state) law is concerned, the City of Bellevue has the power and the authority to annex the realty in question and it may "tax and regulate in those areas to the extent permitted by the Congress

---

* Hon. Talbot Smith, Senior United States District Judge, Eastern District of Michigan, sitting by designation.

1. The opinion, United States v. City of Bellevue, Nebraska is reported in 334 F. Supp. 881 (D.Neb., 1971).

2. Offutt Housing Co. v. County of Sarpy, 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151 (1956).

of the United States." Howard v. Comm'rs of the Sinking Fund of the City of Louisville, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953); Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970). There is no challenge before us as to these matters.

■■ In view of the unique and peculiar nature of the area, militarily dominated and oriented as it is, having little community of interest with near-by Bellevue, providing in substantial part to our necessary community facilities, the inevitable threshold question arises as to why annexation would be sought. The sole purpose, held the District Judge, was to increase Bellevue's revenues. If Bellevue could include as a part of its population count the 12,000 persons residing in the barracks and quarters on the Offutt Base and in the Capehart area, it could obtain "a larger share of Nebraska state tax receipts that are distributed to municipalities on a *per capita* basis." Such was the Government's allegation, found by the trial court to be supported by a record "replete" with evidence thereof. We have held repeatedly that we do not set aside the findings of fact by a trial judge sitting without a jury unless it is clear that they are without adequate evidentiary support. Manning v. Jones, 349 F.2d 992 (8th Cir., 1965); Jackson v. Hartford Accident and Indemnity Co., 422 F.2d 1272 (8th Cir., 1970); cert. denied, 400 U.S. 855, 91 S.Ct. 86, 27 L.Ed. 2d 92 (1970). Here there was substantial evidence in the record supporting such findings.

■ The legal effect of this factual finding was examined by the Nebraska Supreme Court in Witham v. City of Lincoln, 125 Neb. 366, 250 N.W. 247 (1933), and the rule thereon stated as follows:

This court has held that a municipality cannot annex property for revenue purposes, as appears to have been

done in the case at bar. Joerger v. Bethany Heights, 97 Neb. 675, 151 N. W. 236; Village of Osmond v. Smathers, 62 Neb. 509, 87 N.W. 310 (250 N.W. at 249).

Thus, it was the conclusion of the District Court upon such authority that the annexation was invalid as far as for an unlawful purpose.

■ The appellant, however, urges to us that the cases cited in support of the holding all pertained to "strictly agricultural land that was rural in nature," and argues that all of the cases cited stand merely for the proposition that "Annexation of agricultural land, rural in character, cannot be accomplished for tax purposes only" pointing out that the statutes of Nebraska now exempt agricultural land from annexation.[3] From this the conclusion tendered is that the doctrine of the Witham case *supra*, that a municipality cannot annex property for revenue purposes, no longer is the Nebraska law.

The argument is ingenious but not persuasive. The proscription against annexation for revenue purposes only is not so restricted. It finds widespread application in both case and statutory law. Thus, the sister state of Iowa provides by statute [4] that an annexing municipal corporation must show that it is capable of extending substantial services and benefits not theretofore enjoyed "so that the proposed annexation will not result merely in increasing the revenue from taxation" of such municipal corporation, and the Supreme Court of Oregon has enjoined a proposed annexation by the City of Estacada of the "River Mill Plant" of its General Electric Company where the "inclusion of plaintiff's property was unreasonable and where the annexation was employed for the sole purpose of enhancing the revenues of the city . . ."[5] Moreover, and returning to Nebraska law, we find no intimation in the opinions relied upon to

---

3. Nebraska Reissue of Revised Statutes, 1943, § 16–117.

4. I.C.A. § 362.26, para. 6.

5. Portland General Electric Co. v. City of Estacada, 194 Or. 145, 241 P.2d 1129 (1952).

so restrict the salutary doctrine to the degree that appellant suggests. The more accurate view is well expressed in Basis of Annexation of Territory by Municipal Corporations, 21 Iowa L.R. 128, 133 (1935), wherein it is said, "The courts have not allowed municipalities, under the guise of annexing adjoining property, to acquire territory simply for the purpose of raising revenue, and especially have the courts scrutinized the proceedings to determine the existence of this element when agricultural land was involved." See, generally, McQuillin on Municipal Corporation, 3rd Ed., Annexation, §§ 7.10–7.23, particularly the latter.

The lower court relied also upon the warning expressed in Howard v. Comm'rs of the Sinking Fund of the City of Louisville, *supra*, with respect to the annexation of federally owned land on which a Naval Ordnance Plant was located, stating that "It is friction, not fiction, to which we must give heed." In view of the nature of the property here sought to be annexed, being the headquarters, of the Strategic Air Command, the court felt a "potential for friction" with the City of Bellevue pressing upon the Court, indeed that the interests of the United States in its national security outweighed any interests of the City of Bellevue in acquiring the property. The appellant, on the other hand, points to the present lack of friction in the Capehart area and stresses that the court referred to "potential danger that may arise from city ordinances yet to be passed." In view of the abundance of litigation as to federal-state-municipal powers and functions with respect to annexed military reservations, see Hammack, Annexations of Military Reservations by Political Subdivisions, 11 Mil.L.R. 99 (1961), we cannot say that the court's apprehensions were unfounded. But in the view we have taken of the case as to the unlawfulness of annexation for revenue purposes only, we do not reach this point. Nor do we consider the problem of annexation, *vel non*, of Capehart housing area. The annexation here authorized by the municipality, and enjoined by the lower court, consisted of both the above described base and the housing area adjacent thereto. Our affirmance rests on the fact that the base area is included in the annexation. We reiterate that whether the city of Bellevue might annex the Capehart house area alone is not a matter now before us, nor do we intend to decide that issue.

Affirmed.