UNITED STATES of America, Plaintiff,

v.

James H. McGEE et al., Defendants.

Civ. No. C–3–77–136.

United States District Court,
S. D. Ohio, W. D.

May 24, 1977.

Robert A. Steinberg, Asst. U. S. Atty., Dayton, Ohio, for plaintiff.

Robert E. Albright, Columbus, Ohio, James W. Drake, Dayton, Ohio, for defendants.

## FINDINGS OF FACT, OPINION, AND CONCLUSIONS OF LAW

CARL B. RUBIN, District Judge.

This matter is before the Court pursuant to plaintiff's prayer for an injunction restraining the defendant City of Dayton, the Commissioners of the City of Dayton, the Dayton City Law Director, and all officers, agents, employees, and servants thereof from implementing annexation or exercising any municipal powers over the land occupied by the United States Air Force and known as the Wright-Patterson Air Force Base. A temporary restraining order without notice was issued on May 9, 1977 with a date of hearing set for May 16, 1977. At such hearing counsel for the United States and counsel for the defendants appeared and presented argument to the Court.

On May 16, 1977 this Court did extend the temporary restraining order until Wednesday, May 25, 1977 at midnight.

Rule 65(b) of the Federal Rules of Civil Procedure requires the Court to give reasons for the granting of a restraining order without notice and reasons for the extension thereof.

From May 10, 1977 through May 13, 1977 all district judges in the Sixth Circuit were required to attend a judicial conference of the Sixth Circuit at Louisville, Kentucky. 28 U.S.C. § 333 imposes a mandatory duty of attendance unless excused by the Chief Judge of the Circuit. At the first available court date thereafter this matter was heard and the aforesaid opportunity for argument given. The temporary restraining order has been extended in order that this Court may set forth in detail its reasons for the action it proposes to take.

In the belief that the plaintiff is entitled to a preliminary injunction and the defendants are entitled to a hearing thereon, the Court does submit Findings of Fact and Conclusions of Law. Counsel may request and will receive an opportunity to present evidence on the accuracy of such findings. Should counsel by agreement forego further hearing, the Court will adopt these findings and conclusions as the basis for a permanent injunction.

I

## FINDINGS OF FACT

1. Wright-Patterson Air Force Base is located in southwestern Ohio in Mad River and Wayne Townships, Montgomery County, Ohio, and in Bath and Beavercreek Townships in Greene County, Ohio. The base contains approximately 8,146 acres of land. It employs in excess of 24,000 military and civilian personnel. In addition to

its function of contributing to the general defense of the United States it serves as the base for the Air Force Wright Aeronautical Laboratories, composed of the Air Force Avionics Laboratory, the Air Force Aeropropulsion Laboratory, the Air Force Flight Dynamics Laboratory, and the Air Force Materials Laboratory. These laboratories are intended to perform research and development in the expansion of technology for weapons systems.

The Aeronautical Systems Division manages planning, research, development, testing, contracting and acquisition of all aeronautical weapons used by the Air Force. The base is likewise the headquarters for the Air Force Logistical Command, charged with the obligation of repairing, remodeling and supplying all things necessary to keep the weapons systems of the Air Force in an appropriate state of readiness. The Air Force Logistics Command employs in excess of 90,000 civilians in various locations throughout the world.

The Foreign Technology Division is likewise assigned to Wright-Patterson Air Force Base. It acquires, analyzes, produces and disseminates scientific and technical intelligence information on foreign aerospace weapons systems.

The Air Force Institute of Technology, located at Wright-Patterson Air Force Base is responsible for university level professional education in support of the development and management of the Air Force and approximately 400 military officers are presently pursuing masters degrees programs at its school.

2. The City of Dayton, Ohio is a municipal corporation operating in accordance with the provisions of Title 7 of the Ohio Revised Code. Article XVIII of the Constitution of Ohio grants authority to municipalities and specifically provides in paragraph 3 as follows:

> Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary or other similar regulations as are not in conflict with general laws.

3. Wright-Patterson Air Force Base has been the subject of other attempts at annexation. During 1976 the City of Dayton, the City of Fairborn, and the Township of Beavercreek have each attempted to annex all or a part of the Wright-Patterson Air Force Base.[1]

4. On or about May 5, 1977, the legislative authority of the City of Dayton, Ohio approved a petition seeking to annex Wright-Patterson Air Force Base to the City of Dayton. Although Ohio Revised Code § 709.01 became effective October 1, 1976,[2] neither the Secretary of Defense, nor any other person provided in such statute, gave approval for the annexation petition.[3]

## II

## OPINION

We approach the question of annexation of a military installation by a municipal corporation without the benefit of controlling precedent. The Court has been cited to

---

1. For purposes of this Finding of Fact it is unnecessary to recount in detail the complex series of events that have involved partial or total annexation of the Wright-Patterson Air Force Base. Reference is made to Civil No. C–3–76–145, entitled *United States of America v. Jack E. Pope, Clerk of the City of Fairborn*, U. S. Court of Appeals for the Sixth Circuit Nos. 76–2349 and 76–2350 for full details. See also Appendices A, B and C attached hereto.

2. See Appendix D attached hereto.

3. The Court will take judicial notice of the Constitution of Ohio, the actions of the General Assembly of Ohio, and the actions of the Board of City Commissioners of the City of Dayton.

Such judicial notice serves as the basis for Findings of Fact 2 and 4.

The Court will take judicial notice of previous filings in this Court as the basis for Finding of Fact 3.

The Court will accept provisionally the uncontroverted affidavit of Col. Titus C. Hall attached to the motion for summary judgment filed by the United States in *United States of America v. Jack E. Pope, Clerk of the City of Fairborn*, Civil No. C–3–76–145 as well as the uncontroverted statements in open court by the United States on May 13, 1977 as the basis for Finding of Fact 1.

*United States of America v. City of Bellevue, Nebraska*, 474 F.2d 473 (8th Cir. 1973), where the annexation of Offutt Air Base by a municipality was enjoined and to *Howard v. Commissioners of the Sinking Fund of the City of Louisville*, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617, where the annexation of a Naval Ordnance Plant was not.

In the *Bellevue* case the United States Court of Appeals for the Eighth Circuit found that the City of Bellevue sought annexation in order to increase its population and thereby receive a larger share of state tax receipts distributed to municipalities on a per capita basis. This, the Court held, was contrary to Nebraska law. While this Court takes judicial notice of a municipal income tax in the City of Dayton and that in 1974 the Congress of the United States authorized withholding from federal employees' salaries for the payment of municipal income tax (5 U.S.C. § 5520), this case should not be decided on the basis of motive by the City of Dayton.

In the same fashion, *Howard v. Commissioners* is not totally applicable since in that case the annexation was not challenged by the United States. There is dicta in each case that bears upon the situation herein, but issues far more fundamental than the annexation of a plant or a greater slice of state tax receipts should control its disposition.

A military base is unlike any other federal installation other than another military base. Ingress and egress may be restricted; city ordinances regarding discharge of firearms, storage of combustible and explosive materials, and supremacy of civilian police may be routinely violated; zoning restrictions, occupancy standards, and maintenance of streets, sewers, and dwelling structures may not conform to those of any municipality.

The mere existence of a military air base adjacent to the City of Dayton may subject the inhabitants thereof to excessive dangers. In the event of war the base would be a target for enemy action and retaliatory strikes might devastate the entire area. It is not suggested that these are likely occurrences. It is suggested that this points up the essential and unique quality of any military installation. The power to maintain such an installation is constitutional in nature [4] and above and beyond the power of any municipal corporation to change.

This basic principle was well stated in *Stewart v. Sadrakula*, 309 U.S. 94 at 103–104, 60 S.Ct. 431 at 436, 84 L.Ed. 596 (1940) as follows:

> The authority of state laws or their administration may not interfere with the carrying out of a national purpose. Where enforcement of the state law would handicap efforts to carry out the plans of the United States, the state enactment must, of course, give way.

The Court does not doubt that the City of Dayton would willingly agree at this time to noninterference with the function of the Air Force base. But what one board of city commissioners can agree to, another board of city commissioners can reverse. It is this aspect of annexation that it is most troubling. Whether or not the city could enforce its municipal ordinances is of far less significance than the time, effort, and resources it might require for the appropriate administrative and legal officers of the United States Air Force to resist an effort to do so. Justice Minton in delivering the opinion of the Supreme Court of the United States in *Howard v. Commissioners, supra*, made the following observation 344 U.S. at page 627, 73 S.Ct. at page 467:

---

4. The Constitution of the United States in Article I, Section 8, provides in part as follows: The Congress shall have power to . . . provide for the common defense . . . to raise and support armies . . . to provide and maintain a navy . . . to make rules for the government and regulation of the land and naval forces . . . to exercise exclusive . . . authority over all places purchased by the consent of the legislature of the state in which the same shall be . . . for the erection of forts, magazines, arsenals, dockyards and other needful buildings; and to make all laws which shall be necessary and proper for carrying into execution of the foregoing powers . . . . .

The fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal area within its boundaries *so long as there is no interference with the jurisdiction asserted by the federal government. The sovereign rights in this dual relationship are not antagonistic. Accommodation and cooperation are their aim. It is friction [and] not fiction to which we must give heed.* (emphasis added)

While it is dictum only, the observation of the United States Court of Appeals for the Eighth Circuit in the *Bellevue* case bears repetition:

In view of the nature of the property here sought to be annexed, being the headquarters of the Strategic Air Command, the Court [district court] *felt a 'potential for friction'* with the City of Bellevue pressing upon the court, indeed that the interests of the United States in its national security outweighed any interests of the City of Bellevue in acquiring the property . . . In view of the abundance of litigation as to federal-state-municipal powers and function with respect to annexed military reservations . . . we cannot say that the court's apprehensions were unfounded. . . . (emphasis added)

This Court joins in such apprehensions and considers the fact circumstances of the *Bellevue* case substantially closer to those at bar than the fact circumstances of the *Louisville* case.

■ There are functions of necessity and convenience that a municipal corporation may render for its inhabitants. It should provide for the public health, safety, welfare and morals of its inhabitants. It should be entitled to assess its citizens and those who have the benefit of its services an appropriate charge by way of a tax for the services rendered. It is not, however, charged with providing for the common defense. This is the obligation of the military establishment of this nation, an obligation to all citizens irrespective of location. The City of Dayton, Ohio and the Wright-Patterson Air Force Base have little else in common other than location on adjacent real estate. Propinquity alone should be insufficient justification for interference or the potential for interference in the constitutional mandates imposed upon the military.

## II

## CONCLUSIONS OF LAW

■ A. This Court has jurisdiction pursuant to 28 U.S.C. § 1345; this being a civil action commenced by the United States.

■ B. Wright-Patterson Air Force Base as the headquarters of 65 major military units, including the Air Force Wright Aeronautical Laboratories, headquarters of the Air Force Logistics Command, and the Air Force Institute of Technology performs a function in the common defense that may not be interfered with by any municipality adjacent thereto.

C. The annexation by a municipality of Wright-Patterson Air Force Base might interfere with its function and would provide a potential for friction between civilian authorities of such municipality and the military authorities charged with specific obligations under the Constitution of the United States.

D. There is a potential danger in the annexation of an important military base such as Wright-Patterson Air Force Base of interference from city ordinances already in existence or those that might be passed in the future. Such military installation should not be diverted from its essential task of national defense by dealing with such existing or future municipal ordinances.

E. All defendants herein as well as the City of Dayton, its officials, agents, and employees should be and are hereby each and all enjoined from proceeding with any pending annexation of or exercising any jurisdiction, control, dominion or sovereignty over the Wright-Patterson Air Force Base, its territory, employees and inhabitants in any fashion whatsoever without the agreement of the Secretary of Defense of

the United States or his duly authorized representative until the hearing of this matter on its merits.

IT IS SO ORDERED.

### APPENDICES

Appendix A: Order dated June 11, 1976 in *United States of America* v. *Jack E. Pope, Clerk of the City of Fairborn*, Civil No. C–3–76–145

Appendix B: Order dated July 13, 1976 in *United States of America* v. *Jack E. Pope, Clerk of the City of Fairborn*, Civil No. C–3–76–145

Appendix C: Order dated May 3, 1977 in *United States of America* v. *Jack E. Pope, Clerk of the City of Fairborn*, Civil No. C–3–76–145

Appendix D: Revised Code of Ohio, § 709.01, effective October 1, 1976

### APPENDIX A

UNITED STATES OF AMERICA,

Petitioner,

v.                     Civil No. C–3–76–145

JACK E. POPE, CLERK OF THE CITY OF FAIRBORN, ET AL.,

Respondents.

### ORDER

Pending the issuance of findings of fact and conclusions of law in this matter the Court does preliminarily find that the plaintiff has made a strong showing of probable success at trial; that the denial of a preliminary injunction would cause the plaintiff irreparable injury; the issuance of a preliminary injunction would cause no substantial harm to others and that it is in the public interest that Wright-Patterson Air Force Base not be annexed by any municipal corporation during the pendency of this matter.

Accordingly, all municipal corporations, all boards of township trustees and all boards of county commissioners, including their officers, agents and employees, which have pending or which may commence during the pendency of this action proceedings to annex the Wright-Patterson Air Force Base or any part thereof are hereby ENJOINED from taking any action which will lead to such annexation until the hearing of this matter on its merits.

In accordance with Rule 65(c) of the Federal Rules of Civil Procedure, no security will be required of plaintiff.

It is so ORDERED.

s/  Carl B. Rubin
Carl B. Rubin
United States District Judge

### APPENDIX B

UNITED STATES OF AMERICA,

Plaintiff,

v.                     Civil No. C–3–76–145

JACK E. POPE, CLERK OF THE CITY OF FAIRBORN, ET AL.,

Defendants.

### ORDER

On June 11, 1976, this Court entered an Order dealing with the Wright-Patterson Air Force Base. Such Order was intended to prevent the annexation of any portion of that base by a municipal corporation prior to the hearing of this matter on its merits.

Through inadvertence this Court neglected to include the term "incorporation" with the term "annexation". Subsequent to such Order the Court has been advised that a petition to incorporate "Wayne Township" now pending before the Board of Commissioners of Montgomery County, Ohio, has been amended by the petitioners thereof to exclude any portion of the Wright-Patterson Air Force Base from such incorporation.

With the exclusion of such air force base land the incorporation proceedings are not violative of the intent of this Court's Order of June 11, 1976.

Until the hearing of this matter on its merits, the use of the word "annexation"

shall likewise be deemed to include the word "incorporation".

It is so ORDERED.

s/ Carl B. Rubin
Carl B. Rubin
United States District Judge

APPENDIX C

UNITED STATES OF AMERICA,

Plaintiff,

v.                                    Civil No. C–3–76–145

JACK E. POPE, CLERK OF THE CITY OF FAIRBORN, et al.,

Respondents.

**ORDER**

This matter is before the Court under the following circumstances: On June 11, 1976 this Court issued a preliminary injunction enjoining any municipality, township, or county from annexing Wright-Patterson Air Force Base. The defendants appealed from this order.

While the appeal was pending, the Ohio Legislature amended Ohio Revised Code § 709.01 to read as follows:

Territory may be annexed to, or detached from, municipal corporations, in the manner provided in sections 709.01 to 709.47 of the Revised Code. No territory lying within the boundaries of a military base, camp, or similar installation under the jurisdiction of a military department of the United States government, that is used for the housing of members of the armed forces of the United States and is a center for military operations of the department shall be annexed to a municipal corporation under sections 709.01 to 709.21 of the Revised Code without the approval of the secretary of defense of the United States, his designee, or other person having authority under federal law to give such approval.

On February 9, 1977 the United States Court of Appeals for the Sixth Circuit re-manded this case for a determination of whether this statute applies to the facts of this case. The Court stated further:

. . . [I]f the Ohio statute applies to the facts of the case before us, we would agree that the statute has mooted the controversy between the parties and we would remand for vacation of the injunction and dismissal of the appeal.

The Court finds that this statute has direct applicability to the facts of this case. Under the language of the order of remand, the Court further finds that this case is moot.

Accordingly, this matter is hereby DISMISSED for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

s/ Carl B. Rubin
Carl B. Rubin
United States District Judge

APPENDIX D

Ohio Revised Code § 709.01

Annexation and detachment of territory.

Territory may be annexed to, or detached from, municipal corporations, in the manner provided in sections 709.01 to 709.47 of the Revised Code. No territory lying within the boundaries of a military base, camp, or similar installation under the jurisdiction of a military department of the United States government, that is used for the housing of members of the armed forces of the United States and is a center for military operations of the department shall be annexed to a municipal corporation under sections 709.-01 to 709.21 of the Revised Code without the approval of the secretary of defense of the United States, his designee, or other person having authority under federal law to give such approval.