UNITED STATES of America,
Plaintiff-Appellee,

v.

James H. McGEE, et al.,
Defendants-Appellants.

No. 82–3068.

United States Court of Appeals,
Sixth Circuit.

Argued April 12, 1983.
Decided July 26, 1983.

Robert E. Albright, Richard C. Brahm (argued), Lucas, Prendergast, Albright, Gibson, Newman & Gee, Columbus, Ohio, for defendants-appellants.

Arthur E. Gowran (argued), Robert D. Clark, Dirk D. Snel, Land & Natural Resources Div., Appellate Section, Washington, D.C., for plaintiff-appellee.

Before LIVELY and MARTIN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This case involves the continuing efforts of the City of Dayton, Ohio, and other nearby municipalities to annex land belonging to the United States Wright-Patterson Air Force Base, located in Greene and Montgomery Counties, Ohio. In the present appeal Dayton challenges a permanent injunction against such annexation issued by the Southern District Court of Ohio on November 17, 1981. We affirm the decision of the district court enjoining the annexation.

I

The Wright-Patterson Air Force Base has been under the exclusive jurisdiction of the

United States since 1945. The base covers roughly 8,146 acres of land and serves as headquarters for the Air Force's Logistical Command, its Aeronautical Systems and Foreign Technology Divisions, its Institute of Technology and its four Aeronautical Laboratories. Approximately 24,000 military and civilian personnel work at this facility.

The dispute over annexation of the territory within the boundaries of the Wright-Patterson Air Force Base has a complex and lengthy history involving five years of litigation in the district court and two previous appeals to the Sixth Circuit. In February 1976, various landowners in the Dayton area petitioned the Montgomery County Commissioners to annex an area of land, including the Wright-Patterson land, to the City of Dayton. The petition was approved by the County and forwarded to Dayton for acceptance or rejection pursuant to Ohio law. Before the City acted on the petition, however, the United States commenced an action in the Southern District of Ohio seeking a preliminary injunction against the annexation. *United States v. Pope,* Civil No. C–3–76–145 (S.D.Ohio 1976). District Judge Carl Rubin granted the injunction and the City appealed to this court.

While that appeal was pending, the Ohio Legislature amended Ohio Rev.Code § 709.-01 to provide that no territory within the boundaries of a United States military base could be annexed to any Ohio Municipal corporation without the approval of the Secretary of Defense. The effective date of this amendment was October 1, 1976, and it was made applicable to all annexation petitions that were pending on that date. In light of this development, this court issued an order remanding the *Pope* case to the district court with instructions to determine whether § 709.01 applied to the current annexation proceedings, and, if so, to dismiss the case as moot. On remand, the district court issued an order dated May 3, 1977, in which it concluded that the new amendment had "direct applicability to the facts in the case." The case was dismissed and no appeal was filed.

Despite the order of the district court, the Dayton Board of City Commissioners subsequently approved the annexation of the Wright-Patterson land without the consent of the Secretary of Defense. This prompted the United States to file the present action on May 10, 1977, in an effort to enjoin Dayton from implementing the annexation and from exercising any municipal powers over the base.

On May 24, 1977, the district court issued a preliminary injunction against Dayton. In its findings of fact and conclusions of law, the court analogized the case to the situation before the Court of Appeals for the Eighth Circuit in *United States v. City of Bellevue, Nebraska,* 474 F.2d 473 (8th Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 46, 38 L.Ed.2d 60 (1973), and held that the potential for friction between military and city officials in the event of annexation justified its decision to grant the injunction. *United States v. McGee,* 432 F.Supp. 557, 560–61 (S.D.Ohio 1977). The court also stated as follows:

> In the belief that the plaintiff is entitled to a preliminary injunction and the defendants are entitled to a hearing thereon, the Court does submit Findings of Fact and Conclusions of Law. Counsel may request and will receive an opportunity to present evidence on the accuracy of such findings. Should counsel by agreement forgo further hearing, the Court will adopt these findings and conclusions as the basis for a permanent injunction. *Id.* at 558.

On June 7, 1977, Dayton moved for the district court to vacate the preliminary injunction and dismiss the case. District Judge Rubin interpreted a portion of Dayton's motion as a request for an evidentiary hearing and scheduled one for July 28, 1977. Prior to the date of the hearing, however, Dayton appealed the case. On November 5, 1979, this Court entered an order holding that the district court had not abused its discretion in granting the preliminary injunction. The evidentiary hearing was postponed during the time the case was pending on appeal.

The case remained dormant until July 2, 1981, when the United States filed a motion for summary judgment. On September 25, 1981, the district court issued an order requiring Dayton to show cause why the court should not make permanent the previously issued preliminary injunction. In response to this order, Dayton argued that a permanent injunction could not be granted until it had been afforded an evidentiary hearing. At the show cause hearing subsequently held, the district court indicated that an evidentiary hearing would be fruitless in the case.

On November 17, 1981, the court entered an order and judgment holding that it was unnecessary to hear further evidence in the case and making the injunction permanent. It held that Ohio Rev.Code § 709.01, as amended effective October 1, 1976, applied to the present case and precluded further annexation proceedings with respect to the Wright-Patterson Air Force Base without the consent of the Secretary of Defense. As an alternative basis for issuing the permanent injunction, the court adopted its May 24, 1977 holding concerning the potential for friction between the military base and the City if the Wright-Patterson land were annexed. This appeal followed. Reference is made to the reported decision of the district court at 432 F.Supp. 557 for a recitation of additional pertinent facts.

## II

The City of Dayton advances several arguments on appeal in support of vacating the injunction. First, it asserts that the district court abused its discretion in granting a permanent injunction without affording it an evidentiary hearing. Second, the City argues that Ohio Rev.Code § 709.01 is inapplicable to the present case because the annexation petition was no longer pending on the effective date of this statute. Third, it argues that even if § 709.01 does apply, the injunction should be vacated because the statute violates the Ohio Constitution's prohibitions against special legislation and retroactive legislation. Fourth, it contends that the district court erred to the extent

that its decision to grant the injunction against Dayton was based on the potential for friction between military and city officials in the event of annexation. Finally, Dayton asserts that granting the injunction violated the tenth amendment to the Constitution of the United States because it allowed the federal government to interfere with state and local procedures for expanding the boundaries of a state municipality.

## III

We look first to the question of whether Ohio Rev.Code § 709.01 (Page 1982 Supp.), as amended, governs this dispute. This section provides:

Territory may be annexed to, or detached from, municipal corporations, in the manner provided in sections 709.01 to 709.47 of the Revised Code. No territory lying within the boundaries of a military base, camp, or similar installation under the jurisdiction of a military department of the United States government, that is used for the housing of members of the armed forces of the United States and is a center for military operations of the department shall be annexed to a municipal corporation under sections 709.01 to 709.21 of the Revised Code without the approval of the secretary of defense of the United States, his designee, or other person having authority under federal law to give such approval.

As previously mentioned, the effective date of the amendment was October 1, 1976. Furthermore, § 3 of Ohio House Bill 1482, which amended § 709.01 to read as quoted above, clarifies the applicability of this section as follows:

SECTION 3. Petitions for incorporation filed pursuant to Chapter 707. of the Revised Code and petitions for annexation filed pursuant to Chapter 709. of the Revised Code which are *pending* on the effective date of this act shall be governed by the terms of this act.

*See* Ohio Rev.Code § 709.01 (Page 1982 Supp. at p. 7, emphasis added).

Dayton claims that § 709.01 does not apply to the annexation petition in the

present case because the petition was not still pending on the effective date of the amendment. It asserts that the petition ceased to "pend" when the county board of commissioners approved it on April 14, 1976, even though the City of Dayton did not give its required approval until May 5, 1977.

We conclude that this argument is completely without merit. The district court stated as follows in its November 17, 1981, order, in which it held for the second time that § 709.01 applied to the present annexation process:

> The law of Ohio is clear that the annexation is not completed until an annexation ordinance has been passed and published as required by Ohio Rev.Code § 709.04. *Bach v. Goff*, 24 CC(NS) 561; *State Ex Rel South Brooklyn, v. Craig*, 21 CC 13.
>
> Defendant's reasoning must lead to the notion that there is a period of time during which the annexation proceedings are not "pending", but are still not effective. The Court has been cited to no authority that this condition of "limbo" exists. A reasonable and logical interpretation of Section 3 is that the application pends until it is completed. Since it was not completed until after October 1, 1976 amended Ohio Rev.Code § 709.01 does apply and in the absence of an agreement by the Secretary of Defense, Wright-Patterson Air Force Base may not be annexed by the City of Dayton.

We agree with the reasoning of the district court in answering Dayton's argument on this point.

▆ A municipal corporation is a creature of the State. *State v. City of Akron*, 173 Ohio St. 189, 194, 181 N.E.2d 26, 30 (1962). The State has the exclusive power to provide statutory procedures for the annexation of territory to municipalities. *Hunter v. City of Pittsburgh*, 207 U.S. 161, 178–79, 28 S.Ct. 40, 46, 52 L.Ed. 151 (1907); *Trustees of Bazetta Township v. City of Warren*, 46 Ohio App.2d 14, 349 N.E.2d 318, 319 (1975); *Village of Lakeville v. Palmer*, 136 N.E.2d 171, 175 (Ct. of Common Pleas of Ohio 1955). The State Legislature of

Ohio has provided in Ohio Rev.Code § 709.-01 that no territory within the boundaries of a military base shall be annexed without the approval of the Secretary of Defense. Dayton did not obtain such consent, and, therefore, its annexation proceedings were properly enjoined.

## IV

▆ Dayton argues in the alternative that even if the present annexation proceeding is covered by § 709.01, the injunction should still be vacated because this new amendment is violative of the Ohio Constitution's prohibitions against special legislation, article II, § 26, and retroactive legislation, article II, § 28. We also find these claims to be without merit. As to the contention that § 709.01 is unconstitutional special legislation, we note that the language in the statute is general in application. We also note that, by Dayton's own admission in the record, § 709.01 applies to at least one other military base in Ohio besides the Wright-Patterson Air Force Base. The fact that the amendment was sponsored and supported by legislators from the Dayton area, with emphasis on the Wright-Patterson annexation proceedings, does not render it constitutionally defective. *See State v. Cincinnati*, 52 Ohio St. 419, 448, 40 N.E. 508, 511 (1895). We conclude that § 709.01 withstands constitutional attack on this point.

▆ With respect to Dayton's claim that § 709.01 is unconstitutionally retroactive because it applies to annexation proceedings that were already pending before the effective date of the amendment, we point out that the prohibition in the Ohio Constitution against retroactive legislation was intended to protect only "vested rights." *In re Emery*, 59 Ohio App.2d 7, 11, 391 N.E.2d 746, 750 (1978). Parties involved in annexation proceedings that are still pending do not have a vested right in annexation of the land in question. Nor do they have a vested right at that point to rely on existing laws governing annexation. *See State ex rel. Bouse v. Cickelli*, 165 Ohio St. 191, 193, 134 N.E.2d 834, 835 (1956).

For these reasons, the application of § 709.-01 to pending annexation proceedings does not violate art. II, § 28 of the Ohio Constitution.

## V

■ We conclude that the district court did not err in holding that the potential for friction between the Military Base and the City in the event of annexation was a sufficient independent justification for its decision to grant the permanent injunction. The court explained its concern about this "potential for friction" in its May 24, 1977 opinion, which granted a preliminary injunction:

The Court does not doubt that the City of Dayton would willingly agree at this time to noninterference with the function of the Air Force base. But what one board of city commissioners can agree to, another board of city commissioners can reverse. It is this aspect of annexation that is most troubling. Whether or not the city could enforce its municipal ordinances is of far less significance than the time, effort, and resources it might require for the appropriate administrative and legal officers of the United States Air Force to resist an effort to do so. 432 F.Supp. at 560.

This language was quoted in the November 17, 1981 order of the district court, which made the injunction permanent.

In holding that the above reasoning justified the issuance of a permanent injunction against Dayton's annexation attempt, the district court relied on dictum in *United States v. Bellevue, Nebraska, supra,* 474 F.2d 473 (8th Cir.) *cert. denied,* 414 U.S. 827, 94 S.Ct. 46, 38 L.Ed.2d 60 (1973), which is the only cited case that is directly on point with the factual situation presented here.[1] *Bellevue,* involved an attempt by the City of Bellevue, Nebraska, to annex

land within the boundaries of a United States Air Force Base. In commenting on one of the reasons of the district court for enjoining the annexation, the Eighth Circuit Court of Appeals stated as follows:

In view of the nature of the property here sought to be annexed, being the headquarters, of the Strategic Air Command, the court felt a "potential for friction" with the City of Bellevue pressing upon the Court, indeed that the interests of the United States in its national security outweighed any interests of the City of Bellevue in acquiring the property. The appellant, on the other hand, points to the present lack of friction in the Capehart area and stresses that the court referred to "potential danger that may arise from city ordinances yet to be passed." In view of the abundance of litigation as to federal-state-municipal powers and functions with respect to annexed military reservations, see Hammack, Annexations of Military Reservations by Political Subdivisions, 11 Mil.L.R. 99 (1961), we cannot say that the court's apprehensions were unfounded. *Id.* at 476.

The City of Dayton's argument on this point is virtually identical to that presented by the appellants in *Bellevue.* It focuses on the apparent lack of current friction between Dayton city officials and Wright-Patterson military officials, and asserts that a permanent injunction against annexation should not be based on mere speculation as to the potential for friction in the future. We reject this argument, as did the Eighth Circuit in *Bellevue.* Annexation of the Wright-Patterson Air Force Base would create a real danger that a future board of city commissioners might pass ordinances that interfere with the base's essential task of national defense and create friction between city and military officials. The fact that the present board of commissioners apparently has agreed not to interfere with

---

1. In *Howard v. Commissioners,* 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953), the United States Supreme Court upheld the annexation of a Naval Ordnance Plant by the City of Louisville. That case, however, is distinguishable for two reasons. First, the annexation in *Howard* was not being challenged by the United

States. The suit was brought by employees of the ordnance plant in an attempt to avoid paying city taxes. Second, the potential for friction between city and military officials is much greater in a situation involving the annexation of a key military base than it is with respect to the annexation of a mere ordnance plant.

the functioning of the base is not relevant to this consideration, as the district court indicated. 432 F.Supp. at 560.

Based on the reasoning of the Eighth Circuit in *Bellevue,* we affirm the district court on this issue.

## VI

Dayton places considerable emphasis on its argument that the decision of the district court to grant a permanent injunction without first holding an evidentiary hearing was arbitrary, capricious and an abuse of discretion. It claims to have raised two triable issues of fact that mandated such a hearing: (1) Whether § 709.01 applies in this case; and (2) whether annexation of the air force base would create friction between city and military officials.

■ Normally, an evidentiary hearing is required before an injunction may be granted. *See Medeco Security Locks, Inc. v. Swiderek,* 680 F.2d 37, 38 (7th Cir.1981) (other citations included); *see generally* Fed.R.Civ.P. 65 and 52. It has been held, however, that such a hearing is not necessary where no triable issues of fact are involved. *See Socialist Workers Party v. Illinois State Bd. of Elections,* 566 F.2d 586 (7th Cir.1977), *aff'd on other grounds,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *see also United States v. Byrd,* 609 F.2d 1204, 1208–09 (7th Cir.1979). In *Socialist Workers,* the Seventh Circuit Court of Appeals upheld the issuance of a permanent injunction against enforcement of a Chicago elections statute, even though the defendants in the case had not been afforded an evidentiary hearing on the matter. The court reasoned as follows:

> No purpose would have been served by holding an evidentiary hearing in this case. There was no factual dispute as to the ground on which the injunction was ordered. The district court permitted appellants to file an offer of proof outlining facts they would present if a hearing were granted. We find nothing in this offer of proof which, if proved, would have altered the result; indeed, it has not been demonstrated that anything that could have arisen in a factual hearing

would have altered the result. The absence of such a hearing, therefore, does not constitute a ground for reversal. *See Hagopian v. Knowlton,* 470 F.2d 201, 207 (2d Cir.1972); *Securities and Exchange Commission v. Frank,* 388 F.2d 486, 490 (2d Cir.1968). 566 F.2d at 587.

■ As in *Socialist Workers,* the need for an evidentiary hearing in the present case is obviated due to the nature of the issues involved. The main issue, concerning the applicability of § 709.01 of Ohio Rev. Code Ann., is a purely legal question that obviously does not require an evidentiary hearing. Nor is the question dealing with the potential for friction between city and military officials the type of issue that is susceptible of being proven or disproven at such a hearing. We, therefore, hold that the district court did not err in granting the injunction without affording defendants an evidentiary hearing.

## VII

■ Finally, Dayton argues that the injunction issued by the district court violated the tenth amendment of the United States Constitution because it allowed the federal government to interfere with state and local annexation procedures. The simple answer to this argument is that the federal intrusion complained of by Dayton was sanctioned expressly by the Ohio Legislature when it enacted the 1976 amendment to § 709.01 of the Ohio Revised Code Annotated. Since the injunction merely enforced Ohio law on the question, Dayton cannot complain that it violated the tenth amendment.

Even in the absence of the amendment to § 709.01 there still would be no tenth amendment violation in this case. The tenth amendment provides that "[t]he *powers not delegated to the United States by the Constitution,* nor prohibited by it to the States, are reserved to the States respectively, or to the people." (Emphasis added.) Annexation is viewed as "an act of sovereignty performed under power reserved by the Tenth Amendment...." *Gomillion v. Lightfoot,* 270 F.2d 594, 598 (5th Cir.1959), *rev'd on other grounds,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960). The

present case, however, involves not only power of a state to annex land, but also the power of the United States to maintain and exercise jurisdiction over military bases. The power of the United States in this respect was expressly delegated to it by article I, § 8, cl. 17 of the U.S. Constitution. "[T]he authority of state laws or their administration may not interfere with the carrying out of a national purpose." *Stewart v. Sadrakula,* 309 U.S. 94, 103, 60 S.Ct. 431, 435, 84 L.Ed. 596 (1940).

Nothing in the tenth amendment deprives the United States of powers specifically delegated to it in the Constitution. *See United States v. Darby,* 312 U.S. 100, 124, 61 S.Ct. 451, 462, 85 L.Ed. 609 (1941) and cases therein cited. In light of our previous conclusion in this opinion that annexation of the Wright-Patterson Air Force Base could potentially create friction between city and military officials, and could hamper the United States in exercising its delegated power to maintain such a base, we hold that the issuance of an injunction against annexation does not violate the tenth amendment.

We affirm.

No costs are taxed. The parties will bear their own costs on this appeal.