In the Matter of FRANK V. FOSSELLA et al., Respondents-Appellants, v DAVID DINKINS et al., Respondents-Respondents, and CAMPAIGN FOR A NUCLEAR NAVYPORT REFERENDUM et al., Appellants-Respondents.

Second Department, October 25, 1985

### APPEARANCES OF COUNSEL

*Anne E. Simon* and *Franklin Siegel* (*Joan L. Washington* and *J. Christopher Meagher* on the brief), for Thomas DeLuca and others, appellants-respondents.

*Jerry H. Goldfeder* for Campaign for a Nuclear Navyport Referendum, appellant-respondent. (One brief filed.)

*Robert Allan Muir, Jr.,* for respondents-appellants.

*Frederick A. O. Schwarz, Jr., Corporation Counsel* (*Leonard Koerner, Thomas C. Crane* and *Steven N. Mosenson* of counsel), for respondents-respondents.

*John Marchi, pro se, David Jaffe* and *Kathryn K. Rooney* for
John Marchi, *amicus curiae.*

## OPINION OF THE COURT

Per Curiam.

This is the second time in recent weeks that this matter has
come before this court. It involves an effort to have the Board of
Elections of the City of New York place a proposition for an
amendment to the New York City Charter on the ballot in the
upcoming general election. The proposed amendment would,
among other things, prohibit local municipal authorities from
consenting to the use of city owned property for the development
of any military facility at which nuclear weapons are to be
deployed.* Special Term has now held, *inter alia,* that such an
amendment would interfere with the National Government's
power to provide for a common defense and to regulate the army
and navy and has declared the proposed amendment to be
unconstitutional.

We previously determined, in our earlier decision in this
matter dated October 2, 1985 (*Matter of Fossella v Dinkins,* __
AD2d __), that the mere fact that the proposed amendment
would not become effective unless approved by the electorate at
the upcoming general election did not render the constitutional
issue nonjusticiable (*Matter of Cantrell v Hayduk,* 45 NY2d 925;
*McCabe v Voorhis,* 243 NY 401). As the Court of Appeals stated
in *Matter of Cantrell v Hayduk* (*supra,* at p 926), "[w]here * * *
the relief requested is the preclusion from the ballot of a pro-
posal sought to be placed before the voters, the proceeding is not
rendered premature by the fact that unless approved the chal-
lenged law would not become effective". At the time of our prior
order, however, the validity of the signatures on the two peti-
tions by virtue of which the proposed amendment was to be

---

\* The proposition would amend New York City Charter § 67, which sets
forth the responsibilities of the Board of Estimate, by adding the following new
subdivisions 8, 9 and 10 thereto:

"8. The board shall not approve any sale, lease, exchange or other disposi-
tion, or any franchise, permit, license, use or consent to use, of any city owned
property, or street, so as to facilitate the development of any military facility,
any component of which is designed to carry or store nuclear weapons.

"9. The board shall not approve any unit of appropriation, capital project,
purchase or any other expenditure so as to facilitate the development of any
military facility, any component of which is designed to carry or store nuclear
weapons.

"10. If any provision of this section or the application thereof to any persons
or circumstances is held invalid, the validity of the remainder of this section or
of the application of such provision to other persons and circumstances shall
not be affected thereby."

placed on the ballot (pursuant to Municipal Home Rule Law §§ 24, 37) was still in doubt; we therefore directed Special Term to rule on the validity of the signatures first, and to proceed to rule on the constitutional issue only if necessary. Having complied with our directive, and having determined that there were sufficient valid signatures so as to warrant placement of the proposal on the ballot, Special Term reached the constitutional question, and concluded that the proposed amendment, if enacted, would violate the Constitution of the United States. We agree with Special Term's finding of unconstitutionality.

The New York City Charter empowers the Board of Estimate, *inter alia,* to "[g]rant leases of city property and concessions for the use of city property" (§ 67 [1]). The Board of Estimate has "final authority respecting the use, development and improvement of city land" (NY City Charter § 67 [4]). The proposed amendment would curtail this power and would prohibit the Board from consenting to the use of any city property so as to facilitate the development of any military installation "any component of which is designed to carry or store nuclear weapons". The proposed amendment goes much further than that, however, and would also prohibit the Board of Estimate from approving "any * * * expenditure so as to facilitate the development of any military facility, any component of which is designed to carry or store nuclear weapons". Thus, the Board of Estimate, a body whose concurrence is necessary for the city to adopt its budget (NY City Charter § 120 [b]), would be foreclosed from approving any expenditure which would, in any way, facilitate the development of any military facility in which nuclear weapons are to be stored.

The Constitution of the United States assigns to the Federal Government the power "[t]o raise and support Armies * * * [t]o provide and maintain a Navy [and] [t]o make Rules for the Government and Regulation of the land and naval Forces" (US Const, art I, § 8 [12-14]). The United States Supreme Court has stated that "[n]o interference with the execution of this power of the National government in the formation, organization, and government of its armies by any State officials could be permitted without greatly impairing the efficiency, if it did not utterly destroy, this branch of the public service." (*Tarble's Case,* 80 US 397, 408.)

The proponents of the proposed amendment cannot deny that the establishment of a military base is an aspect of the Federal Government's power to raise and support an army and navy (*see, United States v McGee,* 432 F Supp 557, *affd* 714 F2d 607). Nor

can it be reasonably argued that local concerns, however justified, might, in some circumstances, allow for any interference with the exercise of that power. The power to raise and maintain an army and navy is "broad and sweeping" (*United States v O'Brien,* 391 US 367, 377, quoted in *Rostker v Goldberg,* 453 US 57, 65); it is a power which "tolerates no qualifications or limitations, unless found in the Constitution or in applicable principles of international law" (*United States v Macintosh,* 283 US 605, 622, *overruled on other grounds Girouard v United States,* 328 US 61). A State or a political subdivision of a State may not hinder the Federal Government's deployment of conventional or nuclear weapons within its territory simply because of a concern — perceived in good faith as it might be — that the presence of such weapons would constitute a danger to the local population. This becomes apparent when one reflects that if every local government were given the power to restrict the establishment and operation of Federal military installations or weaponry located within its geographical jurisdiction, the power of the Federal Government to raise and maintain an army and navy would, as warned by the United States Supreme Court in *Tarble's Case (supra),* be destroyed.

It is argued, however, that the proposed amendment would not require the city, by its various agents, to impede or obstruct the development of a nuclear base, but rather would only prevent the city from cooperating in the development of such a project. Allegedly, the former conduct on the part of a local government would presumably be unconstitutional; the latter would not. In other words, it is contended by the proponents of the proposed amendment that the city would not, by merely withholding its support from the development of such a military base, as required under the proposed amendment, be guilty of actually interfering with the facility and thus be in violation of the Constitution. We do not accept this argument.

A local law will be declared unconstitutional not only if it actually completely frustrates a Federal purpose, but also if it "impairs the efficiency of [those] agencies of the Federal government to discharge the duties for the performance of which they were created" (*Davis v Elmira Sav. Bank,* 161 US 275, 283, quoted in *Nash v Florida Indus. Commn.,* 389 US 235, 240). The question is whether a challenged local law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*Hines v Davidowitz,* 312 US 52, 67, quoted in *Perez v Campbell,* 402 US 637, 649). In the case at bar, it might be theoretically possible for the Federal Government to support a military enclave cut off from all local municipal

services. It cannot, however, be realistically argued that forcing a military base to operate in isolation would not at least impair its efficiency. If the city were required, pursuant to the proposed amendment, to withhold support for the development of a military installation, it is clear that the Federal authorities would be handicapped, if not completely frustrated, in their operation of such a facility.

We conclude that any State or local law, including any provision of the New York City Charter, which would inhibit State or local officials from cooperating with the Federal authorities in respect to a matter of National defense would interfere with the exclusive and plenary power of the Federal Government to prepare for, and wage war, and to provide for a common defense and would therefore violate the United States Constitution.

Furthermore, to the extent that the proposed amendment to New York City Charter § 67 would prohibit the Board of Estimate from approving "any sale, lease, exchange or other disposition * * * of any city owned property, or street" to the Federal Government "to facilitate the development of any military facility, any component of which is designed to carry or store nuclear weapons", it is violative of State Law § 50 (2). That enactment states in pertinent part that "every * * * city * * * is hereby authorized and empowered to sell, lease, exchange, donate or otherwise dispose of [any] tract, piece or parcel of land to the United States for [the purpose of military reservations, parade or maneuver grounds or aviation fields], *notwithstanding the provisions of any charter* or any other statute" (emphasis added).

Accordingly, the judgment under review should be affirmed.

MANGANO, J. P., GIBBONS, THOMPSON, BROWN and EIBER, JJ., concur.

Judgment of the Supreme Court, Richmond County, dated October 23, 1985, affirmed, without costs or disbursements.

Cross appeal by petitioners dismissed, without costs or disbursements (*see, Parochial Bus Sys. v Board of Educ.*, 60 NY2d 539).

Motion by appellants-respondents, brought on by order to show cause dated October 24, 1985, denied.